(Decided July 14th, 1866.)

Jacob N. Shauck *vs.* The Northern Central Railway Company.

Employer and Employee; Rail Road Companies,—their duties and responsibilities: Negligence of Fellow Servant.—When several persons are employed in the same general service and one is injured by the carelessness of another, though the negligent servant in his grade of employment is superior to the one injured, the employer is not responsible.

Shauck *vs.* Northern Central Railway Co.

The limit of the duty of a railroad company to its employees, is to exercise ordinary and reasonable care in procuring for its operations sound machinery, and faithful and competent employees, and while it is responsible for the omission to perform these duties, it does not guarantee their safety from the consequences of the carelessness or neglect of its other employees engaged in the same general business of operating the road.

Appeal from the Superior Court of Baltimore city:

The appellant instituted this suit on the 1st day of August, 1863, to recover damages for a personal injury sustained by him while engaged as brakesman in the employ of the defendant. All errors in pleading were released, and the case tried upon the facts as presented at the trial.

At the trial of the cause, the plaintiff offered evidence tending to show that while in the employ of the defendants, as brakesman, and while acting as such, he was injured by the wheel of a car, belonging to the defendant, running over and cutting off his arm ; and that the accident was attributable to the defective condition of the engine to which the train was attached. It was in proof, that on the day preceding this accident, a bolt connected with the steam valve of the engine had broken, and the engine had been sent to the defendant's shop to be repaired. The workmen at the shop were unable to extract this broken bolt, and on the morning of the accident the engine, without being repaired, was sent out attached to a freight train, on which the plaintiff was brakesman. When the engine was brought out of the shop in the morning it worked badly, and was used that day in consequence of the other engines being all in service. The nature of the injury to the engine was such as to cause it to jerk and work irregularly in starting or stopping the train, because of the steam leaking through the valve when it should be shut off. Although the engine was defective on leaving the defendant's depot on the morning in question, it was not so much so as not to be manageable with care, but

prior to the accident it had become unmanageable in consequence of said broken bolt working out on the road. The engineer of the train, on arriving at Cockeysville, had found Lewis, the defendant's master of machinery, there, and reported to him the condition of the engine, and the said Lewis requested him to try and get the train to York, some forty miles distant, but to do his best not to injure anybody.

The defendant then offered evidence to show, that Clark, the superintendent of the defendant's road, Lewis, its master of machinery, Cole, the foreman of its machine shops at Bolton, and the men employed under him, and Davis, the assistant master of machinery, and those employed at the Bolton depot in despatching the defendant's trains, were competent and faithful men and officers; that the number of engines in the service of the defendant at that time accomplished all the work the defendant had for them to do, but were working to their full capacity; and that the said engine was in good order up to the day preceding the day of the accident, and was put in good order again afterwards merely by replacing the broken bolt with a new one, and that the defect in the engine was not communicated to Cole, the foreman of the defendant's shops, prior to its leaving town on the morning of the accident.

After the foregoing evidence had been given to the jury, the following prayers were offered on the part of the plaintiff:

1st. "If the jury find from the evidence that the injury sustained by the plaintiff was caused by the negligence of the defendant in not supplying a proper locomotive, or by negligence of the defendant in not selecting competent and careful agents, the plaintiff is entitled to recover such damages as the jury shall believe to be a fair indemnity for the injury received, and the suffering caused thereby."

2d. "If the jury find from the evidence that the plaintiff

was thrown from one of the cars of the defendant [No. 27,] and lost his arm thereby, and that he was so thrown by reason of a defect in the machinery of the engine which was known to the master of machinery of the defendant before the occurrence of said injury; and shall further find that such defect was not remedied and said engine not repaired because of the negligence of the defendant in not having a sufficient number of locomotives to supply the place of locomotive No. 27, while the same should be laid aside to be repaired, then the plaintiff is entitled to recover in this action such damages as the jury shall be of the opinion he may be entitled to have by reason of the loss of his arm and the pain and suffering caused thereby."

3rd. "It was the duty of the defendant to procure the machinery, materials and men, necessary to equip and run the road, and if the jury find that the defendant was injured in the manner stated in the declaration, in consequence of the failure of the defendant to provide a sufficient engine to run on said road with safety to the persons employed on said train of cars, or by the failure of the defendant to employ competent agents to superintend and furnish proper locomotives, or to run the same, then the plaintiff is entitled to recover."

4th. "The plaintiff prays the Court to instruct the jury, that there is evidence in this case on which it is competent for the jury to find that the defendant had notice of the defective condition of the engine (No. 27) at the time it was started from the Bolton depot, on the morning of the 22nd of August, 1860, as stated in the evidence."

5th. "That there is evidence in this case on which it is competent for the jury to find that the injury to the plaintiff was sustained because of the omission of the defendant to provide a sound locomotive for the train of cars on which the plaintiff acted as brakesman at the time of the said injury; and if the jury further find that the plaintiff, when he

started on said train of cars on that occasion, had no notice of the defective condition of said locomotive, then the defendant is liable in this action, provided the jury find that said injury was occasioned by the failure of the defendant to provide a sound locomotive for the train of cars aforesaid."

6th. "The plaintiff prays the Court to instruct the jury, that if they find, from the whole evidence aforesaid, that the plaintiff was injured, in the manner stated in the evidence, because of the failure of the defendant to keep engine No. 27 in a sound condition at the time it left the Bolton depot with a train of cars attached, on which the plaintiff was riding; and if they further find that plaintiff was brakesman on said train of cars, and had no notice of such defective condition of said engine when he started on the trip, in the course of which he was injured, as stated in the evidence, then the defendant is liable in this action, provided the jury further find that on said 22nd of August, 1860, the defendant, by its agents, used the said engine No. 27 in its defective condition, because it had no other engine to substitute therefor."

The defendant then offered the following prayer :

1. "If the jury shall be satisfied from the evidence that the plaintiff, at the time and place when and where he suffered the injury complained of, was a brakesman in the employ of the defendant, and acting in his capacity as such, and that said injury was occasioned by engine No. 27 being out of repair, and that said engine was in running order until the 21st of August, 1850, and that an accident then happened to said engine which made repairs necessary before she could go into service again, and that owing to the negligence of other servants of the company in its workshops, whose duty it was to see that none but engines in fit condition should be put into service or used, the said engine was sent out on the morning of the 22nd of August, 1860, without proper repairs, and that the plaintiff in consequence sustain-

ed the injury of which he complains, then that the plaintiff is not entitled to recover, unless he shall satisfy the jury, by evidence, that in selecting the employees or servants through whose negligence the accident occurred, the defendant did not use reasonable care in procuring for its operations faithful and competent employees; and that the plaintiff has offered no evidence that the defendant did not exercise all reasonable care in the selection of the said servants, or in procuring for its operations sound machinery and faithful and competent employees."

The Court ( MARTIN, J.,) rejected all of the plaintiff's prayers, and granted the prayer of the defendant; and the propriety of the Court's action in this respect forms the basis of the present appeal.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN, and WEISEL, J.

*Robert J. Brent* and *Michael A. Mullin,* for the appellant:

I. The general rule of law is, that when injury is inflicted on one servant by the negligent act of his fellow servant, the common master is not responsible. In Ohio, this proposition has been denied, but it is affirmed by nearly all the authorities. *Priestly vs. Fowler,* 3 *Mees. & Wels.,* 1. *Farwell vs. Boston & Worcester R. R.,* 4 *Metc.,* 4. *Brown vs. Maxwell,* 6 *Hill,* 592.

These are the leading English and American cases, which have been followed by numerous others, and by this Court in *O'Connell vs. Balto. & Ohio R. R.,* 20 *Md. Rep.,* 212.

II. But this general rule has these limitations, that the master must be free from blame, that he must provide suitable machinery, and that when he employs his servants on dangerous work, he must take all reasonable precautions to guard them from danger. These limitations are asserted in the cases quoted above, as well as in the following : *Patter-*

*son vs. Wallace,* 1 *Macq.,* 748; (28 *Eng. L. & E. Rep.,* 50.)
*Brydoun vs. Steward,* 2 *Macq.,* 30. *Barton Hill Co. vs.
Run,* 3 *Macq.,* 288. *Snow vs. Housatonic R. R. Co.,* 8
*Allen,* 441. *Keegan vs. Western R. R.,* 4 *Seldon,* 175.

The case of *Holmes vs. Clarke,* 31 *L. T. Exch.,* 355, is the
latest decision, having been rendered in 1862, and is also
reported in 2 *Amer. Law Reg.,* 107. *Marshall vs. Stewart,*
33 *Eng. L. & E. Rep.,* 1. *Canser vs. Taylor,* 10 *Gray,* 274.
*Byron vs. Telegraph Co.,* 26 *Barb.,* 39. *Hayes vs. Smith,*
2 *Wins.,* (28 *Ver.,*) 59.

III. But the Court in its rulings on the appellant's pray-
ers Nos. 2 and 3, refused to declare the responsibility of the
appellee, in case the jury believed that the accident resulted
from its own negligence. This is pushing the exemptions of
corporations beyond the adjudicated cases, and it is not sup-
posed that the law of this proposition will be maintained,
but that it will be justified upon the ground, that there was
no evidence that the appellee was guilty of any negligence.
The evidence contained in the bill of exceptions shows, that
this justification is incomplete. It shows, that on the day
previous to the accident a bolt attached to the steam
valve of the engine had broken ; that the engine was sent to
the company's work-shop in Baltimore for repairs; that be-
fore it was repaired, and notwithstanding its serious defect
was known to the company's assistant master of machinery,
he was compelled to send the engine, which could hardly be
managed by hand, in its dangerous condition, because the
company had provided no other locomotive to spare; that at
Cockeysville, the engineer found Mr. Lewis, the company's
master of machinery, and reported to him the condition of
the engine, but Mr. Lewis told him to go ahead, and try and
not injure anybody. That there was then no general super-
intendent of the company, but that Mr. Lewis was appoint-
ed master of machinery by the president.

The appellee then proved, that all its agents were compe-

tent and faithful men, which would seem to negative the fact that the accident was caused by their negligence; that the company had provided a sufficient number of engines to do all the work it had for them, working to their full capacity. The accident was caused by the inability of the engineer to control his engine, owing to the defect of the steam valve, of which the appellant was ignorant.

Under this state of facts, the Court took the case from the jury, holding that there was nothing from which the jury might infer negligence on the part of the appellee. It is claimed that this was error.

An engine unsuitable and dangerous is sent out from the company's principal work-shop, with the consent of its chief machinist present, for the reason that there was no other to send, though the company required that a train should run, and while on the road, the master of machinery is informed of the same defect, and his only statement is to go ahead, and try and hurt no one. The engineer was not to blame for the accident, nor was the master of machinery or his assistant; for, according to the proof, they were competent and faithful men, and only sent a train with the best and only engine they had in obedience to orders. These facts might satisfy a jury of the negligence of the corporation. In ruling that these fact implied no negligence on the part of the company, but only on the part of the employees, the Court omitted from its consideration the fact, that a corporation can only act through its servants; that it never acts directly in the superintendence of its active business, and that the negligence of its chief officers, in any particular branch of service, may be its own negligence, and not the negligence of a fellow servant of the appellant.

The master of machinery and his assistant, representing the company in matters of machinery, he was an agent, and *in loco principalis;* not a fellow servant of the appellant, but his superior. *Wright vs. E. N. Cent. R. R.,* 28 *Barb.,*

80. *Little Miami R. R. vs. Stevens,* 20 *Ohio,* 415. *Walker vs. Balling,* 22 *Ala.,* 294. *Dixon vs. Rankin,* 1 *Am. R. R. Cases,* 569. *Patterson vs. Wallace,* 1 *Macq.,* 748; (28 *Eng. L. & E. Rep.,* 50.) *Railroad Co. vs. Keary,* 3 *Ohio St. Rep.,* 201. *R. R. Co. vs. Collins,* with *Redfield's Notes. Am. Law Reg., March,* 1866, *p.* 266, *et seq.*

Notice to the agent of the corporation, whose duty it is as such agent to act on such notice, is notice to the corporation. This was a foreign corporation, and had no superintendent in Maryland, as appears by the record. Its master of machinery was its highest officer. 4 *Paige,* ( *N. Y.,*) 136, 137. 3 *Conn.,* 164, 166. 2 *Hill,* 451, 463. 3 *Hill,* 262, 274, 275. 1 *Md. Ch. Dec.,* 398, ( affirmed in 5 *Md. Rep.,* 156.)

The responsibility of the company for its own negligence being established, then, the extent of that responsibility does not depend on a special contract, but is implied by the general policy of the law. *Derby vs. Phila. & Read. R. R.,* 14 *How. U. S.,* 486.

*J. Mason Campbell* and *Daniel M. Thomas,* for the appellee:

The defendant's prayer presents these two propositions:

1st. That where a railroad company provides sound and sufficient machinery for its service, which subsequently gets out of repair, and by the negligence of its servants in allowing such machinery, without the default or knowledge of the company, to be used while in that condition, a fellow servant is injured, the company will not be held responsible for such injury, unless it be shown, that in selecting its employees or servants, it did not use reasonable care in procuring faithful and competent persons.

2nd. That the subsequent unfitness of the machinery, or the negligent act of the servants of the company in a particular instance, are not, in themselves, evidence of a failure

of the company to exercise such reasonable care, but these facts, coupled with the knowledge of such subsequent unfitness, and with a failure to provide suitable and sound machinery, may be considered by the jury in passing upon the question of the negligence of the company.

The counsel for the appellee contend for the correctness of both these propositions:

1st. The law applicable to cases of this sort has undergone a thorough examination in the most respectable tribunals in this country and in England. It is simply the case of an injury sustained by a servant through the negligence of a fellow servant.

If the engine in question was unfit for use, it was negligence in the persons in control of the defendant's depot to allow it to be used. In the nature of things the company must commit a discretion in such cases to some of its officers or servants, and the abuse of that discretion by persons who have been selected with proper care will not render the company liable. The authorities are numerous to show, that in such cases the master is not responsible where he has exercised ordinary care in the selection of his servants, and in providing proper machinery. This doctrine as first laid down in *Priestly vs. Fowler, 3 M. & W.,* 1, has been affirmed by many subsequent decisions, among others by *Hutchinson vs. Railway Co., 5 Exch.,* 343. *Wigmore vs. Jay, 5 Exch.,* 354. *Tarrant vs. Webb, 86 Eng. C. L. Rep.,* 797. *Roberts vs. Smith, 2 Hurls. & Nor.,* 113. *Ormond vs. Holland, 96 Eng. C. L. Rep.,* 102.

In *Tarrant vs. Webb,* Jervis, C. J., says: "The rule is now well established, that no action lies against the master for the consequences to a servant of the mere negligence of his fellow. That, however, does not negative negligence in every case. The master may be responsible where he is personally guilty of negligence; but certainly not where he has done his best to get competent persons.

He is not bound to warrant their competency." And, in *Roberts vs. Smith*, WILLIS, J., expressly desired it might be understood, that the Exchequer Chamber ordered a new trial " upon the ground that there appeared to have been evidence of the personal interference and negligence of the master." The same principle is laid down by the House of Lords, in the case of the *Bartonshill Coal Co. vs. Reid*, 3 *McQueen*, 266, where Lord CRANWORTH. C., says : " with reference to the law of England, I think it has been completely settled, that in respect of injuries occasioned to one of several workmen engaged in a common work, ( and I know of no distinction whether the work be dangerous or not dangerous,) the master is not responsible if he has taken proper precautions to have proper machinery and proper servants employed." In the subsequent case of *Searl vs. Lindsey*, 103 *Eng. C. L. Rep.*, 428, the same question again arose in the Court of Common Pleas, and was fully discussed in all its bearings, and in view of all the latest decisions upon the subject, and the same conclusion was there arrived at. The latter case is important to be noticed, because there the attempt was made to introduce the distinction taken in some of the Courts of this country, between the case of a servant injured by the negligence of a fellow servant of equal grade with himself, and the case of a servant injured by the negligence of a fellow servant of superior grade to himself, and exercising control over him. The plaintiff was third engineer of the defendant's steamship, called the " Ireland," and was injured through the negligence of the chief engineer under the following circumstances : The screw of the " Ireland " was put into gear by means of a patent winch which required six men to work,—three at each handle. In the course of a voyage, whilst the plaintiff and others were at the winch, one of the handles came off in consequence of the want of a nut or pin to secure it, and the result was, that the men at the other handle were overpowered, and one of them ( the

plaintiff) grievously injured. The chief engineer on board was a person named Simpson, who was admitted to be a competent workman. It was his duty to see that the machinery (which was in proper condition at the commencement of the voyage) was kept in order; and his attention had been called to the state of the winch several times, but he had omitted to remedy the defect. The Court was unanimously of opinion that the plaintiff could not recover, and WILLIAMS, J., said: "I think there was no foundation for the argument that Simpson, the chief engineer of the vessel, and the plaintiff, stood in any other relation towards each other than that of ordinary fellow servants. Then, applying the rule of law which is now firmly established, the common employer is not liable to either for an injury sustained through the negligence of the other. In order to take this case out of the ordinary rule, it was contended that here there was negligence on the part of the employees themselves. In order to make that out, there must be reasonable evidence to show that they were to blame, either in respect to their not having provided proper machinery and appliances, or not having retained competent workmen. I do not find any evidence at all of any default in either of these particulars. If the winch was out of order, it was owing to Simpson's negligence. There was no evidence, nor any suggestion, that Simpson was not a perfectly competent engineer." And the opinions of the other judges were all to the same effect.

This citation of cases will show that the principle of law asserted by our prayer is firmly established in England. And that the same principle is recognized and adopted by the Courts of leading authority in this country, will appear by reference to the cases of *Ryan vs. The Rail Road*, 11 *Harris*, (*Pa.*,) 384. *Seaver vs. The Rail Road*, 14 *Gray*, 466. *Gilshannon vs. R. R. Co.*, 10 *Cushing*, 228. *Buzzell vs. Manufacturing Co.*, 48 *Maine*, 113. 20 *Barbour*, 450. *Kee-*

60      v. 25.

*Ryan vs. R. R. Co.*, 4 *Seldon*, 175. *Coon vs. Syr. & Ut. R. Co.*, 6 *Barbour*, 231.

In the case of *O'Connell vs. The Baltimore & Ohio Railroad Company*, 20 *Md. Rep.*, 212, this Court has adopted the same principle to the full extent of our prayer; and were the same question now open for discussion, we submit, that the cases of *Searle vs. Lindsey*, in the Common Pleas of England, and the *Bartonshill Coal Co. vs. Reid*, in the House of Lords, (published since the decision in O'Connell's case,) would abundantly confirm this Court in its views, as then expressed.

2d. We come now to the second proposition involved in the defendant's prayer, and contend, that the subsequent unfitness of the machinery, or the negligent act of the servants, in a particular instance, are not, in themselves, evidence of a failure of the Company to exercise all reasonable care in the selection of its servants, or in procuring for its operations sound machinery. In other words, the mere fact of an engine, previously sound, becoming unsound on a particular day, is not, of itself, evidence of that subsequent unsoundness being known to the company. And the mere fact of an officer of the company, selected with due care, being guilty of a particular act of negligence, is not, in itself, evidence of the company's knowingly employing an officer who is unfit for his position. If this be so, and the cases already cited show that it is, then there was no evidence in this case from which the jury could find " that the defendant did not exercise all reasonable care in the selection of its servants, or in procuring for its operations sound machinery and faithful and competent employees." And if there was no such evidence, it was the duty of the Court so to instruct the jury. The evidence was, that " the number of engines in the service of the defendant at that time, accomplished all the work the defendant had for them to do," and that this particular engine " was in good order up to the day preceding the day

of the accident, and was put in good order again afterwards, merely by replacing the broken bolt with a new one." So that not only was there no evidence of the defendant's failure to supply sufficient and sound engines for its work, but there was positive evidence to the contrary. It is true, the plaintiff's evidence went to show that " this was the only engine that could be procured for this service that morning, there being no other locomotive to spare." But this fact is of no importance without connecting it with evidence of some necessity for dispatching the train that morning, of so urgent a character that it could not wait till a sufficient engine could be procured, or until this one could be repaired. Nor would the existence of such an urgent necessity on this particular morning help the plaintiff's case, unless he had further shown that the emergency was one that might reasonably have been anticipated by the defendant, and against which it was bound to provide in advance. Of this fact there was not only a lack of proof on the part of the plaintiff, but the defendant had offered evidence to the contrary by showing that "the number of engines in the service of the defendant at that time accomplished all the work the defendant had for them to do."

We submit, therefore, that there was a total lack of evidence from which the jury could find that the defendant was in default for not providing a sufficiency of engines for its work, even if the plaintiff could have availed himself of such an objection. But it has been decided in England that a servant cannot take the objection that the company has not provided enough engines for its operations. *Skip vs. Rw. Co.*, 9 *Exch.*, 223.

Nor was there any evidence to go the jury from which they could find "that the defendant *did not* exercise all reasonable care in the selection of its servants." On the contrary, the defendant's evidence showed *that it did exercise such reasonable care*, as it was in proof "that Clark,

the superintendent of defendant's road, Lewis, its master of machinery, Cole, the foreman of its machine shops at Bolton, and the men employed under him, and Davis, the assistant master of machinery, and those employed at the Bolton depot in despatching the defendant's trains, were competent and faithful men and officers."

In view of this positive proof, unrebutted by evidence to the contrary, it was the duty of the Court below to instruct the jury that there was no evidence on this point. This view is supported by all the cases before cited, as they are all based upon the theory that particular acts of negligence on the part of the employer's servants, do not justify an inference that they had not been selected with reasonable care by the employer. The cases even go further than this, and show that particular acts of negligence in the officers employed are not even evidence of the incompetency of such officers. *Frazier vs. Penn. R. R. Co.,* 2 *Wright,* 104.

Still less, therefore, would they furnish evidence *of the employer's knowledge of such incompetency.* And we refer further in this connection, to the case of *Toomey vs. R. R. Co.,* 91 *Eng. C. L. Rep.,* 148, 149, where a non-suit was affirmed because (though there was *some* evidence that the defendant's servant was negligent) *there was not evidence enough to take the case to the jury;* and to the cases of *Wilds vs. Hudson River R. R.,* 2 *Am. L. R.,* ( *N. S.,*) 80, 81. 6 *Gill,* 205–6. *Cotton vs. Wood,* 98 *Eng. C. L. Rep.,* 566. *Skip vs. Rw. Co.,* 9 *Exch.,* 223. *Coonan vs. Rw. Co.,* 4 *Hurls. & Nor.,* 787. *Briggs vs. Taylor,* 28 *Verm.,* 180. 6 *Md. Rep.,* 457. The board of directors represent the company. 42 *N. H.,* 225.

3d. If the foregoing views be correct, then the plaintiff's prayers were all properly rejected. 1st. Because there was no evidence to support them. See *Keech vs. The B. & O. R. R. Co.,* 17 *Md. Rep.,* 47, where this Court rejected an

instruction asked for, *"there being no evidence in the cause upon which it could be based."*    2nd. Because the legal propositions embodied in each and all of said prayers are in conflict with the cases hereinbefore cited.    To note these objections in detail would only be a repetition of the views already submitted.

The 5th and 6th prayers are further objectionable, because they introduced as an element in the case the question of *notice*, on the part of the plaintiff, of the condition of the engine.    If the fact of his not having notice could in any way affect the case, ( which we deny,) there was no evidence from which the jury could find or *infer* such want of notice. But rather, there is the highest possible presumption to the contrary.    It is impossible to believe that he could have been ignorant of the fact that there was something wrong about the engine when it started on its trip.    It is in proof by the plaintiff's own witnesses, that when it was brought out of the shop that morning *"the engine could hardly be managed by hand,"* and that "the nature of the injury was such as to cause it to jerk and work irregularly in starting or stopping the train, because of the steam leaking through the valve when it should be shut off; and the defendant's evidence on this point was, that though the engine, on leaving the depot that morning, was defective, *"it was not so much so as not to be manageable with care."*    The jury, therefore, could only have found him ignorant of the condition of the engine by convicting him of gross and inconceivable stupidity, of which there is no evidence.    If the question of *notice* be material to the case, it matters not whether he had or had not notice *before starting,* if such notice was communicated to him afterwards and before the accident, and in time for him to leave the train.    And that he must have become aware of the engine being unmanageable before arriving at Cockeysville, where its condition was reported to Mr. Lewis, can hardly be disputed; and if so, he had an opportunity there

of refusing to go any further upon the train, in which case, the accident would not have happened.

The sixth prayer is open to the additional objection that it not only requires the Company to furnish sound engines in the first instance, but to keep them in sound condition ever afterwards.

All except the 4th of these prayers are further objection-able, because they leave out of view altogether the question of the exercise of due care on the part of the plaintiff. Even if the jury were to find all the facts contained in those several prayers, the plaintiff would not be entitled to recover, with-out further showing that he had exercised due care himself. *Irwin vs. Sprigg,* 6 *Gill,* 205. 29 *Conn.,* 208–9. 1 *Allen,* (*Mass.,*) 187. *Wilds vs. Hudson River R. R. Co.* 2 *Am. L. R.* (*N. S.,*) 80. *Counter vs. Couch,* 8 *Allen,* (*Mass.*) 437.

The plaintiff's 4th prayer presents a single question of fact to the jury, and if it were unexceptionable in other respects, would be objectionable for that reason, as it tends thereby to give undue prominence to that fact. *Adams vs. Capron & Gwynn,* 21 *Md. Rep.,* 186.

The 1st and 2nd prayers are further objectionable because they allow too great latitude to the jury in making their estimate of damages. *Stockton vs. Frey,* 4 *Gill,* 414–412.

BARTOL, J., delivered the opinion of this Court.

All errors of pleading having been released, the questions to be decided on this appeal are presented by the facts stated in the bill of exceptions, and the prayers offered at the trial; these, in our opinion, bring the case within the principles lately adopted by this Court in *O'Connell vs. Balto. & Ohio R. R. Co.,* 20 *Md. Rep.,* 212; after a careful examination of the cases, the rule of law was there stated to be that "when several persons are employed in the same general service and one is injured by the carelessness of another, though the ne-

gligent servant in his grade of employment is superior to the one injured, the employer is not responsible."

This principle was first announced in *Priestly vs. Fowler,* 3 *Mees. & Wels.,* 1, and a few years afterwards it was adopted in *Farwell vs. The Boston & Worcester R. R. Co.,* 4 *Metcalf,* 49, and in the able opinions delivered in those cases was placed upon reasons that seem to us to be entirely satisfactory. It has been followed by the great current of authorities, both in England and this country, and may now be considered as a part of the Common Law.

It is immaterial to consider whether this principle is based upon the implied contract of the parties, or whether it must be considered as resting upon grounds of public policy which make it unreasonable in such cases to apply the doctrine of *respondeat superior.*

It is now established that the limit of the duty of the company to its employees, is to exercise "ordinary and reasonable care" in procuring for its operations sound machinery and faithful and competent employees, and while it is responsible for the omission to perform these duties, it does not guarantee their safety from the consequences of the carelessness or neglect of its other employees engaged in the same general business of operating the road.

Without entering into a discussion of the reasons on which this principle is founded, or a particular analysis of the numerous cases cited in argument, all of which have been carefully examined, we are of opinion that this case is governed by the decision in *O'Connell vs. The Balto. & Ohio R. R. Co.,* and that there was no error in the rulings of the Superior Court upon the prayers.

*Judgment affirmed.*

(Decided July 17th 1866.)