# L. EDWARD WOLF AND MILTON D. LOWENTHAL *vs.* ANNIE SHRIVER.

*Master and Servant—When Performance of Master's Duty to Furnish Safe Machinery and Keep It in Repair a Question for the Jury—Repairs Should Be Made by Competent Mechanic—Injury to Operator on Die Press—Sufficiency of Evidence.*

It is the duty of an employer to use due care to furnish reasonably safe machinery in the first place, as well as afterwards to keep it in repair.

In an action by an employee to recover damages for an injury alleged to have been caused by a defective machine, prayers are erroneous which instruct the jury to find for the defendant if they believe certain facts therein stated, when such prayers assume that the machine which injured the plaintiff was a reasonably safe one, and do not leave the finding of that fact to the jury.

It is the duty of an employer who has in use machines likely to cause injury to operators, if out of repair, to have them examined and repaired by a competent machinist or mechanic, when informed that they fail to work properly.

Plaintiff informed defendant's foreman that the die press upon which she was working was out of order. The foreman oiled it and told plaintiff that it was all right. Soon afterwards, she was injured by an alleged defect in the machine. This foreman was not a mechanic, nor was he competent to make repairs on machines out of order. Under these circumstances, the plaintiff is not precluded from recovering damages for the injury on the ground of a lack of evidence to show that the foreman was incompetent or that the defendant had failed to exercise due care in his selection.

Plaintiff, a young woman, was put to work on a die press in defendant's factory, which was used to cut out labels. A carriage or platen was raised in a perpendicular frame by a lever on the press, and when held up, the operator withdrew the die and paper and put in a new supply. Plaintiff's evidence was that on the occasion of the injury, although she had shut off the power in the usual way, the platen fell without warning, while she was removing the die, and cut off two of her fingers; that shortly before the accident, she had told the foreman that the machine was out of order, and he had oiled it and told her it was all right; that on another occasion, she had complained of the machine to one of the defendants who had promised to have it fixed; also that the clutch which held up the platen was worn and sometimes allowed it to slip down unexpectedly. *Held,* that this evidence, if believed by a jury, was legally sufficient to entitle the plaintiff to recover.

*Held,* further, that the evidence of contributory negligence on the part of the plaintiff is not such as to bar her right to recover.

*Decided January 12th, 1909.*

Appeal from the Court of Common Pleas of Baltimore City (DOBLER, J.), where there was a judgment on verdict for the plaintiff for $3,250.

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, THOMAS and WORTHINGTON, JJ.

*John E. Semmes* and *Jesse N. Bowen,* for the appellants.

*William Colton* and *Benj. H. McKindless,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee, a young lady twenty-two years old, had her hand injured by a die press, at which she was working while in the employ of the appellants. She sued them for damages, resulting from her injury, in the Court of Common Pleas of Baltimore City and recovered the judgment from which the present appeal was taken.

There are five bills of exception in the record of which three relate to rulings on evidence and two to the Court's action on the prayers. At the hearing of the appeal the appellants' solicitor stated to us that he would not insist on his exceptions to evidence and they will therefore receive no further notice from us.

The plaintiff offered but one prayer which is as follows: "The jury are instructed that it is the duty of an employer to exercise due and reasonable care and diligence to provide the employed with reasonably safe and proper machinery and equipment to do and perform the work required of such employed and not to expose such employed to unnecessary and unreasonable risk and danger during such employment. And if the jury find from all the evidence in this case that the defendants employed the plaintiff to work upon a machine or device known as a die press, and that such machine or device was unsafe and unfit to be used by the defendants for the purpose to which it was applied, and that said defendants knew, or by the exercise of ordinary care on their part might have known of such unsafe and unfit condition of said machine or device in the premises, and that the plaintiff did not know and could not have known thereof by the exercise of ordinary care on her part; and that on or about the 30th day of November, 1906, while the plaintiff was operating said machine or device, she was injured, and that such injury to the plaintiff was directly caused by the negligence and want

of care of the defendants in the premises and without negligence or want of care on the part of the plaintiff directly thereunto contributing, then the plaintiff is entitled to recover."

No special exception was filed to this prayer for want of legally sufficient evidence to sustain it, although the absence of such an exception was practically overcome by the defendants' first prayer asking the Court to take the case from the jury. The plaintiff's prayer was properly granted as it states the legal propositions applicable to the case in conformity with the decisions of this Court. *Md. Steel Co.* v. *Engleman,* 101 Md. 682, 683; *Crawford* v. *United Rys. Co.* 101 Md. 421; *Am. Tobacco* v. *Strickling,* 88 Md. 500; *Cumb. & Penna. R. R.* v. *State use of Moran,* 44 Md. 292-3; *Pikesville, etc., Ry. Co.* v. *Russell,* 88 Md. 571.

Only four prayers offered by the defendants appear in the record. They are designated as the first, second, fourth and sixth and were all rejected by the Court. The first asks the Court to take the case from the jury for want of legally sufficient evidence to entitle the plaintiff to recover. No reference to the pleadings is made in the prayer. The second prayer asks the Court to instruct the jury that the plaintiff was guilty of negligence which directly contributed to the accident by which she was injured and that therefore their verdict must be for the defendants.

The fourth and sixth prayers were as follows:

4th. "The defendant prays the Court to instruct the jury that if the jury find that just prior to the accident the plaintiff called upon Fountain, the foreman in charge of the machinery of the defendant, claiming that the machine would not work, and that thereupon the foreman oiled the machine and told the plaintiff it was all right, then in that event, even though the accident happened by reason of the machinery being out of order, the plaintiff is not entitled to recover, there being no evidence to show that said Fountain was incompetent, or that the defendant failed to exercise due care in his selection as foreman."

6th. "The defendant prays the Court to instruct the jury that if they find from the evidence that the plaintiff was operating the die press described in the testimony, and that she had been instructed to throw the lever off when the plate or upper bed reached the top, and that she neglected to do so, and that by reason of said neglect, if the jury so find, the plate or upper bed descended upon her hand, then in that event the plaintiff is not entitled to recover."

We will now dispose of the fourth and sixth prayers and then consider the first and second prayers which raise the vital issues in the case.

The fourth and sixth prayers, each of which concludes with a direction to find a verdict for the defendants if the jury believe the facts therein stated, are both defective in assuming and not requiring the jury to find as a fact that the machine which injured the plaintiff was a reasonably safe one and would if properly handled perform the work for which it was intended. They thus ignore the well settled legal proposition that the employer is bound to exercise due and proper care to originally furnish for the use of his employees reasonably safe and proper machinery and appliances as well as to keep them in the condition in which from the nature of the employment the employee had a right to expect them to be kept. This subject has received such frequent consideration at our hands that it is only necessary here to refer to some of our decisions in reference to it. *Md. Steel Co. v. Engleman,* 101 Md. 682; *South Balto. Car Works v. Schaeffer,* 96 Md. 107; *Nat. Enameling Co. v. Cornell,* 95 Md. 527.

The fourth prayer presents the further defect of charging the jury that there was no evidence to show that Fountain, the foreman, was incompetent or that the defendants failed to exercise due care in his selection as foreman. The evidence shows him to have been an experienced paper cutter with some acquaintance with machinery and an honest and industrious man, but he himself testified that he was no machinist. When he was asked what duties if any he had in reference to that machine he replied: "I had all to do with

the tending to it." He was then asked what do you mean by that? He replied: "In regard to running it, setting it up and putting somebody on it that understood it, or if they did not understand it I instructed them how to use it." He was then asked: "Who had charge of the machine to see that it was kept in proper order?" To which he replied: "I did as far as I was able to do it, I was no machinist, but the running capacity I attended to that." Being asked what he would do if it was out of order he said: "If it was out of order I think I would be very foolish not to report it." He was then asked what would be his duty if the machine was out of order, he replied: "To report it to the firm." With this testimony in the record it would have been improper to charge the jury that there was no evidence that Fountain was incompetent *to repair* the machine when it was out of order. Assuming that the evidence shows him to have been competent to oil the machinery and superintend its operation when in running order it does not follow that he was competent to repair it when out of order. The owner of a factory like that of the defendants may not be under any obligation to keep a skilled machinist constantly in his service, but when he has in use machines liable to endanger the life or limb of the operators, who work at them, if out of repair, it is his duty, when he has been informed that one of such machines fails to do its work, to have it examined and repaired by a machinist or other competent mechanic.

Turning now to the first and second prayers of the defendants, we are of the opinion that they were properly rejected.

There is evidence in the record tending to show the following state of facts. The appellants as co-partners were, at the time of the accident to the appellee, conducting a printing and advertising art novelty business in Baltimore City. In connection with that business they used for the purpose of cutting or stamping out labels a machine commonly called a die press. This machine consisted of an iron structure with a flat top somewhat resembling a table. On top of the table there was a perpendicular frame in which a carriage or platen

Opinion of the Court.

ascended or descended when the power was applied to it. In its descending motion it struck a die that, with the paper out of which the label was to be cut, had been placed by the operator on the top of the table, and forced the die through the paper and in that manner cut out the label. A lead plate was placed on top of the table under the paper and the die to prevent the latter from being injured by the force of the blow delivered by the descending platen.

In using the machine the operator stood in front of it and applied the power by a hand lever, drawing the lever toward her to raise the platen and pushing the lever from her to lower it. When the platen had ascended to a point indicated by a mark on the machine, if the lever were not promptly moved, the platen would not remain up but would fall again upon the die beneath it. While the platen was held up in its frame it was the duty of the operator to withdraw the die and paper from underneath it and replace the die with a fresh supply of paper and then by the appropriate movement of the lever cause the platen to fall again and cut out another label. The weight of the falling platen had a tendency to drive the die into the soft lead plate beneath it and make it more difficult to remove the die.

The appellee, without having had any previous experience with machines, entered the service of the appellants in the latter part of July, 1906, and was engaged in pasting forms for clothing until sometime in October when she was directed to operate the die press at which she was injured. She was put to work at the machine by Mr. Wolf one of the defendants who as she said "showed her how to set the die and put it under the machine and pulled the lever and shut it off," but, according to her account, gave her no further instructions in reference to the machine. On cross-examination she said that Mr. Wolf told her if she needeed anything or wanted to know anything or anything was wrong with the machine she should see Mr. Fountain.

On November 30, 1906, when the appellee was operating this machine the platen fell upon her hand, as she was en-

deavoring to remove the die and paper from under it, and cut off two of her fingers and permanently mutilated the hand. According to her account she had shut off the power in the usual way with the platen suspended at the top of the machine, and was endeavoring to remove the die and paper in the usual course of her work when the platen descended without warning upon her hand and injured it. She further testified that a week or so before the accident she noticed something wrong about the machine. On being asked what that something was she replied: "As I had put the die in to get the labels cut I had throwed it off, and the machine descended and I quick done like that (indicating)." Q. Got your fingers out? "Yes, I noticed it was doing like that and I thought to myself it ought not to do that, of course I did not know; I called Mr. Fountain's attention to it, he fixed at it and then he told me he could not do anything with it, to tell Mr. Lowenthal." * * * "I told him (Lowenthal) there was something wrong with the machine and he said 'in what way?' I says 'well when I shut the machine off it descends.' He takes the handle and pulls it and tries to run the machine and he put it back again and he says: 'Well I'll have the machine fixed.' After he fixed it himself he said: 'All right go ahead I will have it fixed.' "

She further testified that on the morning of the day of the accident when she was running the machine she put in the die and went to shut the machine off and it would not move. She called the foreman Mr. Fountain and "he fixed at it and oiled it," and he said: "It is all right go ahead;" she resumed work at the machine and directly after that it came down on her hand. When asked to tell how it happened, she replied: "That's all I can say what I have said, I had put in the die and started the machine and shut it off, and the first thing I knew my hand was caught." She further stated in detail that she had worked the lever, as she ordinarily did, at the time of her injury.

Charles Grap, who was an employee of the defendants at the time of the accident, testified that he had operated the

machine on several occasions and that it was not in perfect order, that the clutch which held up the platen was worn and permitted it to slide down. That "you may shut her off 19 or 20 times all right and the twenty-first time she will slide and come all the way down," and also said that after he saw it slip several times he was in fear of his hand as much as the one that was hurt.

There was evidence of a contrary tenor as to, many of the subjects we have mentioned. Mr. Lowenthal denied that the appellee had ever informed him that the machine was out of order or that the platen on it sometimes fell down unexpectedly, and he asserted that the machine was in good order and did its work well when properly managed, and his evidence as to the character of the machine was corroborated by other witnesses. In view however of the evidence to which we have already referred the learned Judge below could not properly have granted the defendants' first prayer.

Nor could the Court, in view of the testimony of the appellee and her witness Grap, have properly granted the defendants' second prayer which instructs the jury as matter of law that she was guilty of such contributory negligence as to debar her from a recovery in the case.

Finding no error in the rulings of the Circuit Court on the prayers we will affirm the judgment appealed from.

*Judgment affirmed with costs.*