E. WILMER McVEY *v.* CHARLES C. GERRALD
[No. 31, April Term, 1937.]

*Decided June 16th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Henry A. Warburton,* with whom was *William J. Rickards* on the brief, for the appellant.

*J. De Weese Carter,* with whom were *Joshua Clayton* and *John I. Watson* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The question on this appeal is whether the servant of a master, who is a farmer, is entitled to recover for injuries sustained in the scope of his employment by a fall caused by a defect in a stationary ladder in the barn of his master.

The plaintiff was a laborer about twenty-seven years of age, and the defendant was a farmer, who employed the laborer to help in hauling the farmer's wheat in the straw into the latter's bank-barn and put it away in the mow. The barn was large and the roof high. The loaded wagon was driven from the inclined way onto the barn floor between the two mows. Because of the height of the mows, an intermediate, temporary, scaffold had been set up, and the wheat straw was forked from the wagon to the scaffold, where it was pitched into the mow and there placed and spread about the mow. Four men were engaged in this labor. On the second day of his service, the plaintiff fell and was badly hurt. At the time of his accident, the hauling and stowing away of the wheat straw had ceased, the mows were full, and the scaffold had been taken down.

There is testimony tending to prove these further facts. The defendant, while in the field a short time before midday, directed the plaintiff to close the upper barn windows and to get the pitchforks which had been left on the top of the wheat straw in one of the mows. To obey this command the plaintiff had to climb a stationary ladder, which was one of two which had been built on either side of the entry between the mows at the time the barn was erected, about nineteen years before the master gave the order to his servant. The ladder rose perpendicularly from the floor of the barn to its square, and was extended from that point to the roof, where the side piece of the ladder was nailed to the rafter. The rounds were held in place by insertion in holes in the upright side pieces of the ladder. The use of the ladder was going to and from the top of the mows when hay or wheat straw was stored there. The plaintiff had not

used the ladder above the square of barn, but he had seen, on the day of his accident, his two fellow workers ascend and descend that portion of the ladder.

In obedience to his master's direction, the plaintiff climbed the ladder. He went beyond the square, and while he was climbing near the top piece and holding on to the side, it pulled loose from the rafter, and the plaintiff fell backward and dropped to the barn floor, an estimated distance of some twenty-five feet, and carried with him the section of the side piece above the square, but the other side piece of the ladder was not at all affected and remained in position, with every round of the ladder intact and in proper position. So, the plaintiff's opinion that "It wasn't substantial to hold me" could not apply to the side piece and all the rounds, including the one on which he was standing, but to the side piece of the ladder, which he pulled loose from the rafter.

Since it was the duty of the master to exercise ordinary care to keep the premises where his servant was employed to work in a reasonably safe condition, so that the servant, while in the course of his employment, may not be unduly exposed to danger, the loosening of the side piece of a stationary ladder from its fastening cast upon the defendant the burden of exculpation, since the failure of the side piece to stay fast was a defect in a fixture on the premises of the master, and in his possession and under his control at the time of the accident. *Security Cement & Lime Co. v. Bowers*, 124 Md. 11, 16, 17, 91 A. 834; *Westinghouse Electric & Mfg. Co. v. State*, 129 Md. 59, 62, 98 A. 206; *Winkelmann & Brown Co. v. Colladay*, 88 Md. 78, 91, 40 A. 1078; *Hearn v. Quillen*, 94 Md. 39, 45, 50 A. 402; *South Baltimore Car Works v. Schaefer*, 96 Md. 88, 103, 104, 53 A. 665.

The question then is whether the ladder was known to be defective, or, by the exercise of reasonable care might have been known to be defective, by the master, at the time of the occurrence of the injury to the plaintiff. There is no legally sufficient testimony which either

directly or inferentially would tend to show that the master had any actual knowledge of any defect in the ladder.

The ladder was a permanent fixture. The evidence is undisputed that it was built out of sound and suitable material and in a careful, safe, and workmanlike manner by a competent carpenter, on whose skill and judgment the owner of the premises was entitled to rely. From its installation it had been used in safety, year after year, for the purposes of its construction, and there is no testimony that there ever was any indication of any structural defect, nor that the master ever had any intimation or reason to perceive or believe that there was any fault as to plan, mode of construction, or quality of material, or that the ladder could not be safely used for all the purposes for which it was designed.

Neither the use of the ladder nor its construction nor its maintenance was such as would call for a replacement of its parts or for periodic or frequent inspection. The ladder was under roof, where it was dry, and where there was no exposure to the weather. There is no testimony from which it could be inferred that any part of the ladder was affected by rot or deterioration. The affirmative testimony on the part of the plaintiff is that the entire piece which was pulled loose was in good condition. Every other part of the ladder remained in its place and was not affected by the separation and fall of the side piece.

The ladder was built so as to use for one of its side pieces a post of oak, eight by eight inches, which rose eighteen feet to the square, and then was reduced in size to six by eight inches, and prolonged eight feet to the roof of the barn. At intervals of one foot holes had been bored to the depth of three inches, and into these holes iron rungs had been securely driven and tightly fastened. The opposite side piece of the ladder from the floor to the square was of oak, into which corresponding holes had been bored to the depth of two inches, and the projecting ends of the rungs driven into these holes. Above

the square, the ladder was similarly constructed except that this upper section of the side piece was a poplar piece two by six inches, described as being the "tough" wood of an indigenous tree locally known as "hickory poplar." After the rungs had been driven into the poplar side piece the lower end at the square was fastened by nails, and at the top the side piece was cut out to the depth of two inches, so as to fit under the bottom, and against the face, of a rafter of the roof. The end of the piece was then nailed to the rafter by two twenty penny nails and a forty penny nail. The builder of the barn testified, and there is no evidence to the contrary, that the ladder was strongly built and properly constructed. Nor is there any testimony to support a finding that there existed rot, decay, or shrinkage in the wood, or rust of nails, or any other condition in the structure or material, that existed at the happening of the accident and would have been discovered by the exercise of ordinary care and diligence on the part of the master.

The continuing and safe use of the ladder, for the purposes for which it was installed, for over eighteen years, was a practical test and demonstration of there being no defect in its construction nor necessity for repair or alteration so far as was discoverable by reasonable care and diligence. The master had gone up and down the section of the ladder above the square on the day before the plaintiff was hurt without any defect developing. The plaintiff himself had used the ladder to get upon the scaffold at the level of the square of the barn, although he had not gone higher until his accident. He had, however, worked on the scaffold, whose level was about eight feet below the rafter where the ladder ended well within his view. He observed, on the two days the plaintiff was hired by the master, the use of the ladder by the other servants who had gone up and down the section of the ladder above the square without an indication of any defect.

The parting of the side piece of the ladder was, therefore, the result of a latent defect, and, in the absence of

any legally sufficient testimony tending to show that the defect either was the fault of the master or would have been discovered by the exercise of ordinary and reasonable care and diligence on his part, the master is not, under all the circumstances, liable to respond in damages to the servant.

No one can be said to be negligent merely because he failed to make provision against a happening which he could not reasonably be expected to foresee. *Wood v. Heiges,* 83 Md. 257, 268, 269, 34 A. 872; *Buttner v. Steel Car & Foundry Co.,* 101 Md. 168, 178, 179, 60 A. 597; *Stewart & Co. v. Harman,* 108 Md. 446, 451, 453, 70 A. 333; *Joyce v. Flanigan,* 111 Md. 481, 497-499, 74 A. 818.

The master is not an insurer of the servant's safety. If any liability attaches, it depends upon a breach by the master of some duty imposed upon him by reason of his relation to the servant in the course of the employment. The loosening and fall of the upper side piece of the ladder is, on the testimony, as consistent (a) with it being caused by a sudden and careless lateral application by the servant of pull and body weight of such concentrated force as to produce a strain upon the loosed side piece which an ordinarily prudent master could not reasonably have anticipated in a servant's use of the ladder; or (b) with a latent or hidden defect; or (c) with a failure of the master to use due care in providing a safe ladder. *Baltimore City Pass. Ry. Co. v. Nugent,* 86 Md. 349, 38 A. 779; *Stewart & Co. v. Harman,* 108 Md. 446, 451-453, 455, 70 A. 333; *Consolidated Gas etc. Co. v. Chambers,* 112 Md. 324, 331, 332, 75 A. 241; *Maryland Telephone Co. v. Cloman,* 97 Md. 620, 626-628, 55 A. 681; *Washington Turnpike Co. v. Case,* 80 Md. 36, 30 A. 571. So, in the absence of any question on the record at bar of improper or negligent construction, no inference of negligence can be drawn from the mere fact that the upper section of the side piece came loose under the pull of the servant, since the manner in which the section of the ladder came loose is, in causative sequence, as consistent either with the fault of the serv-

ant, or with a latent or hidden defect, as with the negligence of the master. The injury suffered did not, therefore, result from some condition or act of such a nature and so wrongful in quality as reasonably to exclude any inference except that of negligence on the part of the master in responsible control. Consequently, to assume negligence of the master from the mere parting and fall of the side piece is to substitute conjecture and choice in alternative inferences for proof of the precise thing which the plaintiff has undertaken, and is bound, to establish as a condition precedent to recovery. On this record, negligence is not to be inferred from the mere happening of the accident. *Gans Salvage Co. v. Byrnes,* 102 Md. 230, 245-248, 62 A. 155; *Stewart & Co. v. Harman,* 108 Md. 446, 455, 70 A. 333; *Pillard v. Chesapeake S. S. Co.,* 124 Md. 468, 474, 475, 92 A. 1040. See *Baltimore & O. R. Co. v. Wilson,* 117 Md. 198, 212, 83 A. 248; *State v. Coal Co.,* 150 Md. 429, 448, 449, 133 A. 601; *Clough & Molloy v. Shilling,* 149 Md. 189, 204-207, 131 A. 343; *Restatement of Law of Agency,* sec. 492 (c), (g), sec. 493 (e)-2.

There is no testimony on the record which tends to show that the latent defect in the ladder could have been avoided by care or discovered by reasonable examination. The master does not warrant the safety of the servant's employment. He undertakes only that he will take all reasonable precautions to protect the servant against accidents. The argument is advanced that the master did not show that he had inspected the ladder. There are two replies to this contention. In the first place, if the failure to inspect is the breach of duty which was the cause of the accident, it must appear that the inspection would have disclosed to the master the defect or condition which caused the accident. So, if an inspection would not have revealed the defect, obviously a failure to inspect could not be the breach of duty that became the cause of the accident. The plaintiff, therefore, had the burden of producing affirmative testimony tending to show an inspection would have revealed to the master

or his servants the cause of the accident. It was so expressly held in *Buttner v. Steel Car & Foundry Co.*, 101 Md. 168, 179, 60 A. 597, 599. At page 178 of the report of that case, it was said: "The general principles applicable to this case have been settled in this state and many others. While the facts are somewhat different here, the legal principles involved are the same which were applied in the case of *South Baltimore Car Works v. Schaefer,* 96 Md. 88, 53 A. 665. It was there held, as there was no evidence that the alleged defect could have been discovered by a proper inspection, nor any satisfactory proof as to what caused certain bolts to break, there could be no recovery. And it was expressly held in that case that the sudden and unexplained breaking of an appliance affords no presumption of negligence on the part of the employer. These general principles, as we have said, are well settled." *Restatement of the Law of Torts*, sec. 365 (d) p. 992; *Stewart & Co. v. Harman,* 108 Md. 446, 453-455, 70 A. 333; *South Baltimore Car Works v. Schaefer,* 96 Md. 88, 107, 53 A. 665.

Again, in *Maryland Telephone Company v. Cloman,* 97 M. 620, at page 628, 55 A. 681, 684, the court stated the rule in this manner: "If it was possible to discover the defect by some customary method of inspection that was not used, then the plaintiff should have established that fact. As was said in *Schaefer's* case: 'It was the duty of the plaintiff, if he relied on failure to inspect, to have offered some testimony which would have justified the jury in finding that the defect causing the injury was one which could have been discovered by the usual and ordinary methods of inspection, commonly adopted by those in the same kind of business which was conducted by the defendant.'" See *Consolidated Gas etc. Co. v. Chambers,* 112 Md. 324, 336-338, 75 A. 241; *Chesapeake Iron Works v. Hochschild Kohn & Co.,* 119 Md. 303, 311, 312, 315, 86 A. 345. See *Nichols v. Pere Marquette R. Co.,* 145 Mich. 643, 108 N. W. 1016; *Wonder v. Baltimore & O. R. Co.,* 32 Md. 411, 416; *Simpson v. Pittsburgh Locomotive Works,* 139 Pa. 245, 21 A. 386; *Anderson v. Howe Scale Co.,* 90 Vt. 244, 97 A. 992.

A further consideration is that the extent and frequency of inspection depends upon the nature of the thing to be inspected, the danger to be anticipated if inspections are not made, and whatever other factors are involved in the determination of the reasonableness of conduct. It is quite clear that the duty varies greatly and that it may be satisfied by infrequent ones where the structure is permanent and does not deteriorate rapidly, and is not subject to much or wearing use. *Restatement of the Law of Agency,* vol. 2, sec. 503 (c) p. 1180.

The common barn ladder is of simple, open, and familiar make, and of durable material. While it is a usual and permanent fixture of a barn, its nature is not that of a dangerous instrumentality nor one whose liability to disrepair would require periodical or other particular examination of a ladder, which was apparently in good condition, for the special purpose of discovering whether any defects exist which may be a possible source of danger to the servants employed on the premises. *Cole v. De Trafford* (No. 2), [1918] 2 K. B. Div. 523, 532.

Here the ladder had been in use for a number of years and had been continuously found safe, secure, and serviceable. On the day before the accident, the master had used the ladder from the square to the rafter, and so had the plaintiff's coemployees on the day of the accident. Their use was the best practical test and inspection of the sound and safe condition of the ladder. "This fact," quoted the court in *South Baltimore Car Works v. Schaefer, supra,* from *Stringham v. Hilton,* 111 N. Y. 188, 197, 18 N. E. 870, "brings the case directly within the rule that, when an appliance or machine not obviously dangerous has been in daily use for a long time, and has uniformly proved adequate and safe, its use may be continued without imputation of negligence." 96 Md. 88, at page 109, 53 A. 665, 668.

As a result of the application of established principles of law to the facts of the record at bar, the court is of the opinion that the plaintiff has failed to establish a cause of action, and the defendant's prayer instructing

the jury to that effect should have been granted. For the error in refusing to take the case from the jury, the judgment must be reversed.

*Judgment reversed, without awarding a new trial, with costs to the appellant.*

OFFUTT, J., filed a dissenting opinion as follows, in which SHEHAN, J., concurred.

The plaintiff in this case, Charles C. Gerrald, is a farm hand. The defendant, E. Wilmer McVey, owns and operates a farm in Cecil County, in this state. There is a barn on the farm in which wheat and similar crops are stored. Access from the floor of the barn to its top is had by means of ladders. On July 11th, 1934, McVey was harvesting wheat and storing it in the barn. He employed Gerrald to help in that work. In connection with the work Gerrald was ordered by McVey to ascend one of these ladders, close certain windows, and "get the forks out." He attempted to obey the order, but as he reached a point near the roof, the ladder collapsed, he fell to the floor, a distance of from twenty-four to twenty-eight feet, and was severely injured.

That particular ladder was apparently constructed in two sections. It was permanent or stationary. One of the upright timbers supporting the barn formed one side of it up to the "square," and was apparently of oak. From the "square" to the roof the sides of the ladder were of poplar. The sides were fastened at the top and bottom, the second or top section was said to be nailed on to the top of the first section, and what might be called the "loose side," that is, the side which did not form a part of the structure of the barn itself, was nailed at the top. It was constructed in 1915, some nineteen years before the accident, and during that time, so far as the record shows, there had been no inspection of it of any kind. The rungs were iron piping not fastened to the sides. Its collapse was caused by the nails fastening it at the top pulling loose. Since the rungs were

merely driven into holes bored in the loose side, and not otherwise fastened, when the nails pulled loose, the loose side fell away from the rungs, and Gerrald was precipitated to the floor. McVey said that the ladder was in "perfect" condition, and one McCardle, who had constructed it nearly twenty years before, agreed that it was a "proper constructed ladder for that kind of barn." It appears, without contradiction, that Gerrald was using the ladder in the only way it could have been used; he merely climbed up on it on his way to the top.

Upon these facts a majority of the court have reached the conclusion that there was no legally sufficient evidence of negligence on the part of the defendant, and that a verdict for the defendant should have been directed. With that conclusion I am unable to agree.

The basis of that conclusion appears to be that there was no duty resting upon the employer to inspect the ladder at all, and that the fact that it had been in use for nineteen years before it fell apart showed conclusively that no inspection was needed.

The duty of a master to exercise ordinary care to see that the place in which his servants are to do the work he employs them to do seems axiomatic, and is certainly the accepted law of this state. 39 *C. J.* 308, n. 13, 313, n. 22; *Jones Hollow Ware Co. v. Hawkins*, 128 Md. 160, 97 A. 365; *Security Cement etc. Co. v. Bowers*, 124 Md. 11, 91 A. 834; *Baltimore, etc., R. Co. v. Wilson*, 117 Md. 198, 83 A. 248; *Chambers v. Woodbury Mfg. Co.*, 106 Md. 496, 68 A. 290; *Hearn v. Quillen*, 94 Md. 39, 50 A. 402; *Hanrathy v. Northern Cent. R. Co.*, 46 Md. 280; *Wonder v. Balto. & O. R. Co.*, 32 Md. 411, 3 Am. Rep. 143. If he undertakes to furnish the servant with appliances and instrumentalities with which to work, he is under a duty to use ordinary care to see that such appliances or instrumentalities are free from any defects which will increase whatever hazard there may be incidental to their use in or about the work on which they are to be used. 39 *C. J.* 308, cases cited note 13. He is in no sense an insurer of the safety of his employees,

39 *C. J.* 313; *J. S. Young Co. v. State,* 117 Md. 247, 83 A. 345; *State v. Flanigan,* 111 Md. 481, 74 A. 818; *Maryland, D. & V. R. Co. v. Brown,* 109 Md. 304, 71 A. 1005; *Merchants' Miners' Transp. Co. v. State,* 108 Md. 564, 70 A. 413; *Stewart & Co. v. Harman,* 108 Md. 446, 70 A. 333; *Wonder v. Balto. & O. R. Co.,* 32 Md. 411; *Shauck v. Northern Central R. Co.,* 25 Md. 462. Nor does the rule that he must use ordinary care to see that the appliances or instrumentalities used by the servant in connection with his work extend to simple tools (39 *C. J.* 342), that is, tools in such common every day use that the servant may be presumed to be as familiar with their qualities, dangers and condition as the master, as an ordinary movable ladder, an axe, a saw, a hatchet, a shovel, a pick or the like. *Id., Labatt on Master and Servant,* sec. 942a, note 9.

An incident of the duty to exercise ordinary care to see that the place where the work is to be done, or the appliances or instrumentalities with which it must be done, are safe, is the obligation to provide adequate, timely, and proper inspection. 39 *C. J.* 415; *Wolf v. Shriver,* 109 Md. 295, 72 A. 411.

A permanent, stationary, ladder is not, however, a tool or appliance, but rather an integral part of a structure or a place, and if the servant is required to use it in connection with his work, the obligation of the master in respect to it is referable to his duty to see that the place assigned to the servant for his work is safe, rather than to his duty to furnish him with safe tools, because such a ladder is as much a part of the building as a stairway for which it is a substitute would be. So there is a distinction between his duty in respect to an ordinary movable ladder and a permanent ladder, since the servant who handles, moves, and places the temporary or movable ladder has the same opportunity of observing its condition that the master would have, but the servant could not inspect the stationary ladder without incurring the very danger and risk against which the master was obliged to protect him.

The duty of the master to furnish the servant with safe appliances has even been extended to an extension ladder. In *Twombly v. Consolidated Elec. Light Co.*, 98 Me. 353, 57 A. 85, 87, where a workman, while on a forty-foot extension ladder, and when he was about twenty-five feet from the ground, fell because a round which supported him broke, it was held that "a 40-foot extension ladder is not a common tool or appliance within the meaning of these rules. A defect in a ladder, arising from age or decay, might not be discoverable by such inspection as a workman is expected to make, and might be upon more careful inspection. To replace a dozy round of a ladder is not, we think, such 'ordinary repairs' as a workman using it is usually expected to make, and certainly not unless the defect is brought to the knowledge of the servant. Of course, a master may furnish suitable materials for such renovations, and the circumstances in a given case may show that the workman is expected to make his own repairs." Other cases illustrating the application of that rule are collected in *Labatt on Master and Servant*, sec. 924a, note 10.

For a much stronger reason the master is liable for injuries caused by defects in a stationary ladder which were discoverable by proper inspection. In *Nichols v. Pere Marquette R. Co.*, 145 Mich. 643, 108 N. W. 1016, 1019, it appeared that an employee of the defendant, while ascending a vertical stationary ladder fixed to a water tower, grasped a round which pulled loose and caused him to fall. There had been inspections, and it was later discovered that there was a decayed spot near the place where the nails pulled out. In holding that the liability of the master was for the jury, the court said: "So far as the argument proceeds upon the theory that the simplicity of the appliance determined, conclusively, the risk assumed by plaintiff, it is believed to be not well supported. Undoubtedly, the degree of care exercised by McCormick would have saved plaintiff from injury. We are not disposed to hold that a thirty-five foot ladder attached to a water tank, only occasionally used, is a

common tool or appliance within the meaning of the rules which exempt the master from the duty to inspect them, upon the presumption that those using them will, and should, first discover defects. It is true that in the case at bar the plaintiff knew the age and the exposure of the ladder as well as did the defendant. But we think it cannot be said that all defects arising from age or decay, which ordinary inspection for the purpose of inspecting would discover, would necessarily or probably be discovered or discoverable by a servant in its use, even if due care on his part was exercised. *Twombly v. Electric Light Co.*, 98 Me. 353, 57 A. 85."

In *Thompson-Starrett Co. v. Wilson*, 39 App. D. C. 211, 40 Wash. Law Rep. 760, a workman fell from a stationary ladder because of a defect in its location, and in holding the master liable the court there said: "It is true that, generally speaking, a ladder is classed as a tool (*Bailey, Mast. & S.* sec. 197; *Cahill v. Hilton*, 106 N. Y. 512, 13 N. E. 339; *Borden v. Daisy Roller Mill*, 98 Wis. 407, 74 N. W. 92), but that it may be more is, we think, apparent. When, in the construction of a building, ladders are furnished for indiscriminate and constantly changing use by carpenters and other employees, their employer is of course not expected to superintend or be responsible for such use. Under such conditions the use of a ladder is a mere detail in the work, and the master would no more be expected to superintend that use than he would be expected to superintend the use of a handsaw, hand plane, or any other similar simple implement. A condition might exist, however, where the employer would feel called upon to assume responsibility for the placing of a ladder, in which event the ladder would become, in legal contemplation, a part of the building, and not a mere tool. Of course if it did assume such responsibility, it would be responsible to its employees for any negligence in that respect."

In an exhaustive note to *Garrison v. Armstrong & Co.*, 10 N. C. C. A. 401, a number of cases illustrating and supporting the conclusions in those cases are collected.

See, also, *Gekas v. Oregon-Washington R. & N. Co.*, 8 N. C. C. A. 386; *Cody v. Lusk et al.*, 8 N. C. C. A. 495; *Pacific T. & T. Co. v. Starr* (C. C. A.) 206 Fed. 157, 46 L. R. A. (N. S.) 1123.

Reverting to the facts of this appeal, there is not the slightest evidence that the defendant had, during the nineteen years between the construction of the ladder and the accident, made any inspection of it, or had paid the slightest attention to its condition. It also appeared without contradiction that while the plaintiff, obeying the defendant's order, was using it in the only manner in which it could be used, and in the very manner it was intended to be used, it suddenly fell apart, so that he was thrown to the floor of the barn and injured. With all due deference to the views of the majority of the court, those facts permit, as I read them, but two inferences: One, that the ladder was improperly constructed or it would not have fallen apart; two, if it was properly constructed, then the wood holding the nails had become so decayed or warped or otherwise unfit, that it was no longer adequate to hold the nails which fastened the ladder, against the stresses to which ordinary usage of it subjected them, or it would not have fallen apart.

The theory that a master may send a workman up a ladder which is so flimsy and unsafe that it will actually fall apart under his weight, and then wash his hands of the consequences because it had never fallen apart before, although it had been in place for nearly twenty years, seems to be unsound, and inconsistent with both reason and precedent.

It is true that the plaintiff is a farm laborer and the defendant a farmer. Nevertheless the farmer was an employer, and the farm laborer an employee, and I know of no principle which permits a distinction between the duty owed by such an employer to his employee, and the duty owed by an employer in any other business to his employees. In this case the employee had no possible means of discovering the danger until the ladder did the one thing which it is ordinarily assumed a ladder

will not do, fall apart. It may be and no doubt is true that ladders are ordinarily used for access to the higher parts of barns, but that is also true of mines, water towers, factory smokestacks, and the like, and yet I know of no rule which excuses masters sending employees to work on such places from liability for defects which reasonable inspection would have disclosed, nor from the duty of making reasonably timely and adequate inspection of their condition.

For these reasons I am unable to concur in the opinion.