GEORGE J. BUTTNER *vs.* THE SOUTH BALTIMORE STEEL CAR AND FOUNDRY CO.

*Injury to Brakeman in Coupling Cars—Insufficient Evidence of Negligence.*

Plaintiff, a brakeman employed by defendant, was injured while coupling cars by being crushed between them. He alleged that the drawheads or bumpers of one of the cars were pushed back through a sill which was of rotten wood. Plaintiff was made unconscious at the time of the accident and did not explain how it was occasioned. The defect in the car alleged to have caused the injury was not visible upon examination and there was no evidence that it could have been discovered by a proper inspection. There was also an absence of proof to show why the bumpers gave way on the occasion in question. There was evidence that the alleged rottenness of the sill was not the cause since the bumpers go through the sill and are fastened to the car underneath. *Held,* that since the plaintiff failed to prove either that the defendant did not exercise due care in providing sound appliances or that there was some defect in them which could have been discovered by a reasonable inspection the jury was properly instructed that there was no evidence of negligence on the part of the defendant.

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thomas G. Hayes* (with whom was *John H. Grill* on the brief ), for appellant.

I. The servant only assumes such risks in defective appliances which are known or plainly observable to him. *Choctaw, &c., R. Co.* v. *McDade,* 191 U. S. 68; *Carpenter* v. *Mexican, &c., R. Co.,* 39 Fed. Rep. 315; *Texas, &c., R. Co.,* v. *Bradford,* 66 Tex. 735; *Am. Tobacco Co.* v. *Strickling,* 88 Md. 504.

II. The negligence of the appellee is clearly shown by its providing and putting these old-style cars with these dangerous and defective couplings into service in its yards and re-

quiring the appellant in performance of his duty to attempt to couple them.

(a) It was the duty of the master to provide and maintain safe machinery, instrumentalities and appliances. *O' Connell* v. *B. & O. R. Co.*, 20 Md. 220; *Wonder* v. *B. & O. R. Co.*, 32 Md. 417; *C. & P. R. Co.* v. *Moran*, 44 Md. 292; *Wood* v. *Heiges*, 83 Md. 268; *Am. Tobacco Co.* v. *Strickling*, 88 Md. 504; *B. & O. R. Co.* v. *Stricker*, 51 Md. 69; *Pikesville, &c.*, *R. Co.* v. *Russell*, 88 Md. 571; *Baltimore Boot Co.* v. *Jamar*, 93 Md. 412.

In Maryland maintenance of machinery and appliances may be delegated to a fellow servant. *Nat. Enam. Co.* v. *Cornell*, 95 Md. 528.

(b) Ignorance of defects may be negligence. *Davis* v. *Detroit, &c.*, *R. Co.*, 20 Mich. 124; *Schmidt* v. *Black*, 76 Ga. 418; 2 *Thomp. Neg.*, p. 994; *Shear & Red. Neg.*, sec. 93.

(c) Knowledge of notice·of defects in machinery, instrumentalities or appliances may be either actual or constructive. These are in law equivalents. *McGhu* v. *Bell*, 19 Ky. L. Rep., 267, 38 S. W. 702; *Houston* v. *Brush*, 66 Vt. 331; *Consolidated, &c.*, *Co.* v. *Haenni*, 146 Ill. 614; *Goff* v. *Toledo, &c.*, *R. Co.*, 28 Ill. App. 527; *Wulkowski* v. *Penokee, &c.*, *Mines*, 41 L. R. A., 33 note.

(d) Greater the risk and danger to human life or limb from defects, greater the duty to exercise ordinary care to discover and remedy the defects. *Patton* v. *Texas, &c.*, *R. Co.*, 179 U. S. 658; 7 *A. & E. Ency. Law*, 1060.

III. The uncontradicted and unexplained testimony of the appellant conclusively shows that the rottenness of the sill to which were attached the draw-heads—complete through and through—that an inspection by a competent inspector would have necessarily discovered the defects before the accident; the nature of the defect showed that the defect would have been discovered by proper inspection. *Walskowski* v. *Penokee, &c.*, *Mines*, 41 L. R. A., 153 note; *Goodsell* v. *Taylor* (Minn.), 4 L. R. A. 673; *Louisville, &c.*, *R. C.* v. *Utz*, 133 Ind. 265; *Suck* v. *Dolere*, 137 Ill. 129, 27 N. E. 62; *King* v. *Ohio, &c.*, *R. Co.*, 14

Fed. Rep. 277; *Pittsburgh, &c., R. Co.* v. *Thompson*, 54 U. S. App. 229; *Solomon R. Co.* v. *Jones*, 30 Kan. 601, 2 Pac. 661; *Matur* v. *Railway Co.* (Mo.), 15 S. W. 970; *Oberfelder* v. *Doran*, 26 Neb. 118, 41 N. W. 1094. Evidence of the condition of the appliances causing the injury after the accident is competent to show the condition of the appliances at the time of the injury. 20 *Am. & Eng. Ency. Law*, 86.

IV. The defects in the couplings which inflicted the injury complained of did not arise from a sudden defect caused by use or the wear and tear of use of said cars and couplings, but was a defect in permanent appliances of said cars, caused by deterioration and rottenness by age and length of time said cars and couplings had been in service, and the duty of the master was by the exercise of ordinary care to discover these defects before putting these cars with their defective couplings and rotten sills into its service on its tracks in its yard. 10 *A. & E. Ency. Law*, 1056, 1057; *Fenderson* v. *Atlantic City R. Co.*, 56 N. J. Law, 708, 31 Atl. 767; *Mensch* v. *Penn. R. Co.*, 150 Pa. St. 598, 25 Atl. 31; *The France*, 20 U. S. App. 212, 215; *Sweat* v. *Boston, &c., R. Co.*, 156 Mass. 284, N. E. 296; *Paine* v. *Eastern R. Co.*, 91 Wis. 340, 64 N. W. 1005.

(A) Rottenness of sill so complete must have existed a long time. 2 *Bailey Per. Inj.*, p. 579; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Chicago, &c., R. Co.* v. *Branyan*, 10 Ind. App. 570; *Stock* v. *LaBonlillier*, 19 Misc. 112, affirming 18 Misc. 349; *King* v. *Chicago, &c., R. Co.* (Iowa), 78 N. W. 837; *Roberts* v. *Smith*, 2 Hurlst. & N. 213; *Baker* v. *Railway Co.*, 95 Pa. St. 211; *Suse* v. *Northern R. Co.*, 39 Fed. Rep. 487; *Covey* v. *Hannibal, &c., R. Co.*, 86 Mo. 635; *Gutridge* v. *Missouri, &c., R. Co.* (Mo.), 16 S. W. 943; *Ryan* v. *New York, &c., R. Co.*, 88 Hun. 269; *Oberfelder*, v. *Doran*, 26 Neb. 118, 41 N. W. 1094; *Washington, &c., Turnpike Case*, 80 Md. 43.

V. The couplings in question were defective in construction; or faulty structural; or unfit or unsafe when put into service. Under the law the master is entitled to no notice of a defect in original construction of a permanent appliance. Knowledge of such defects on the part of the master is inferred if the de-

fect is structural or the appliance is unfit and unsafe when put into service; hence, whether the defects in question were discoverable by proper inspection on the part of the master is an immaterial inquiry.   20 *A. & E. Ency. Law*, 93; *Trombly* v. *Con. E. Lld. Co.*, 98 Mo. 353; 64 L. R. A. 551; *Union P. R. Co.* v. *James*, 12 U. S. App. 486; *Greenleaf, Adm.*, v. *Detroit, etc., R. Co.*, 29 Iowa, 46; *Morton* v. *Detroit, &c., R. Co.*, 81 Mich. 434; *Chicago, etc., R. Co.* v. *Hones*, 132 Ill. 168; *Jefferson* v. *Chapman*, 127 Ill. 438; *Ford* v. *Railroad Co.*, 110 Mass. 240; *Branch* v. *Port Royal, etc., R. Co.*, 35 S. C. 405; *Northern P. R. Co.* v. *Herbert*, 116 U. S. 652; *Shearman and Redfield, Neg.* (4 ed.), sec. 217; *Illinois, &c., R. Co.* v. *Harris*, 53 Ill. App. 592; *Indianapolis, &c., R. Co.* v. *Flanigan,* 77 Ill. 365; *Toledo, &c., R. Co.* v. *Fredericks*, 71 Ill. 294; *St. Louis R. Co.* v. *Davis*, 54 Ark. 389, 15 S. W. 895.

VI. The maxim *res ipsa loquitur* may with propriety be applied to this case.   The testimony of the appellant as to the physical facts of the defective and dangerous condition of the couplings which inflicted the injury in question, with the circumstances attending the accident, unanswered and unexplained by any evidence on the part of the appellee, presented evidence from which the jury might infer, in the absence of explanation, negligence on the part of the appellee, and it was error to take the case from the jury.   *Benedick* v. *Potts*, 88 Md. 52, 55; *Shear. & Red. Neg.* (2 ed.) sec. 13; *Railway Accident Law*, sec. 375; *Rose Case*, 20 Blatch. 411; *Griffin* v. *Boston, &c., R. Co.*, 148 Mass. 143, 19 N. E. 166; *South Balto. Car Works* v. *Schaeffer*, 96 Md. 106; *Scott* v. *London Dock Co.*, 3 Hurlst. & C. 596; *Moyrishan* v. *Hills Co.*, 146 Mass. 586, 16 N. E. 574; *Custer* v. *Oliver Oil Co.* (S. C.) 13 S. E. 419; *Ocean S. S. Co.* v. *Matthews*, 86 Ga. 418, 12 S. E. 632; *Goodman* v. *Richmond, &c., R. Co.*, 81 Va. 576; *Graham* v. *Badger*, 164 Mass. 42, 41 N. E. 61; *Hennessey* v. *Boston*, 161 Mass. 502, 37 N. E. 668; *Houston* v. *Brusch*, 66 Vt. 331, 29 A. 380; *Peirce* v. *Davis, Adm.*, 53 U. S. App. 291, 295; *Atchison, &c., R. Co.* v. *Mulligan*, 34 U. S. App. 7; *Guthrie* v. *Maine, &c., R. Co.*, 81 Me. 572, 18 A. 295; *Treusch* v.

*Kambe*, 63 Md. 281; *Winkelman* v. *Colladay*, 88 Md. 91; *Howser* v. *C. & P. R. Co.*, 80 Md. 146; *South Balto. Car Works* v. *Schaeffer*, 96 Md. 103.

VII. The following leading cases support the claims of the appellant and demonstrate the error of the learned lower Court. *Evans* v. *Chamberlain*, 40 S. C. 104, 18 S. E. 214; *Goodrick* v. *New York, &c., R. Co.*, 116 N. Y. 398, 6 L. R. A. 750; *Oberfelder* v. *Doran*, 26 Neb. 118, 41 N. W. 1094; *Braun* v. *Chicago, &c., R. Co.*, 53 Iowa, 595, 6 N. W. 5; *Louisville, &c., R. Co.* v. *Utz*, 133 Ind. 265, 32 N. E. 881; *Toledo, &c., R. Co.* v. *Conroy*, 68 Ill. 561; *Holis* v. *New York, &c., R. Co.*, 6 N. Y. S. 605; *King* v. *Chicago, &c., R. Co.* (Iowa) 78 N. W. 837.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellee.

In order to entitle the plaintiff to recover it was not sufficient for him to show that the draw-heads gave way. It was necessary for him to show that such giving way resulted from a neglect of some duty owing by the employer to his employee. He should have shown that some defect caused the draw-heads to give way, and that the defect was one which was known to the defendant or ought to have been known to the defendant, had there been a proper inspection. This is the clear doctrine of the *Schaeffer case*, 96 Md. 88, and a long line of similar decisions. This rule has been repeatedly applied to car-coupling cases. *7 Am. & Eng. Ency. Law*, 1056; *I. C. R. R.* v. *Harris*, 53 Ill. App. 596; *A. T. & S. F. R. R. Co.* v. *Wagner*, 33 Kan. 660; *Johnson* v. *C. & O. R. R. Co.*, 36 W. Va. 73; *Skellinger* v. *C. & N. W. R. R. Co.*, 61 Iowa, 714–15; *Bailey on Personal Injuries, relating to Master and Servant*, sec. 365.

The rule, as applied to car-coupling cases, is stated in the Encyclopedia, as follows: "Master must be fixed with knowledge of defects. So when instrumentalities become defective from use, it not only devolves upon the person injured thereby, in an action for damages, to prove such defects, but

he must also show either that the master had actual notice of them, or that they were such as might have been discovered by the exercise of reasonable and ordinary diligence.

The Iowa case cited, is one of an accident caused in much the same manner as that alleged here, to wit, by the driving in of a draw-head. The Court said: "As to driving in the draw-bar there is no evidence whatever that any of the officers of the defendant had any knowledge that the draw-bar was in any way defective, or that it was defective in its original construction. Without some evidence on this question, there could be no recovery."

From the general rule established by these authorities, it of course follows that the master is not liable where a coupling appliance suddenly becomes out of repair. *7 Am. & Eng. Eucy. Law*, 1057; *I. B. & W. R. R. Co.* v. *Flanigan*, 77 Ill. 365; *Fenderson* v. *A. C. R. R. Co.*, 56 N. J. Law, 708.

In the Illinois case it is said that if the coupling of a freight car suddenly becomes out of repair the railway company using the same will not be liable for an injury to an employee received in consequence thereof, unless its attention has been called to the defect, or the company by the exercise of a reasonable degree of care could have discovered the defect and had an opportunity to make the needed repairs.

Applying these rules to the present case, we submit that there *is certainly no evidence whatever of any defect existing prior to this accident*, and hence, of course, no evidence that any defect was known to or ought to have been known to the defendant. The only evidence in the record which can be even suggested as showing a defect which ought to have been discovered is the alleged rottenness of the sills. The plaintiff says that the draw-head went right back through the sill, and that the sill was rotten.

The trouble with this evidence is that there is no causal connection between the giving way of the draw-head and the alleged rottenness of the sill. The plaintiff testifies on cross-examination that the bumpers do not rest against the sill, and are not held in position by the sills, but that they go right

through the sills and are held in position by bolts at the back underneath the car. The purpose of the sill is not to hold the bumper in position, but to give a foothold or step to one climbing in or out of the car. The alleged rottenness of the sill therefore did not cause or contribute to the giving way of the bumpers. Had there been no sills at all the bumpers would still have remained in their proper position, provided their fastenings under the car had remained firm. When the drawhead is struck this pressure is communicated to the bolts under the car, and thus to the body of the car itself, and not in any degree to the sills.

The alleged weakness of the sills, therefore, had no connection with the injury, and there is no other defect shown or suggested in any part of the record.

The evidence that two days *after* this accident two of the defendant's cars were seen coupled together with the sills only two inches apart (even if we assume that the cars were the same ones which caused the plaintiff's injuries) does not prove that there was a defective coupling *before* the accident. In fact, when we look at the whole proof, it shows at most nothing more than the sudden and unexplained giving way of the bumper. This, under the authorities cited, is not sufficient to take the case to the jury. There being no evidence in the case to raise a presumption of negligence as to any duty owing by the defendant to the plaintiff, it was proper to grant the prayer without requiring the defendant to go into its case. *Md. Phone Co.* v. *Cloman*, 97 Md. 628.

Not until the cross-examination did it develop that all that the plaintiff said about the couplers, was based on an observation made two days after the accident of certain cars, which the plaintiff can only identify with the cars causing the injury, because he says somebody told him they were the same. He distinctly admitted that this was the only way he identified them.

On re-direct examination the appellant's counsel endeavored to have him strengthen his identification of the cars, but he only succeeded in getting him to say that the cars which he

subsequently saw must have been the same ones which hurt him, because he saw no others coupled so closely together, and hence none which could have caused the accident in the way in which he has assumed it happened.  This is begging the question.  The appellant first assumes, without any proof, that he was hurt by a loose bumper, and then on finding a loose bumper, infers that this is the car which hurt him. All that he really knows is that he was struck and rendered unconscious.  He saw no loose bumper at the moment of the accident.  His injury may have been due to a loose bumper, or just as likely to his standing in an improper place, or the engineer coming back on him too quickly.  The very first thing for him to prove was that he was hurt by a loose bumper.  It is certainly no proof of this to show that subsequently he saw a loose bumper, which might perhaps have caused such an accident as he had experienced.

FOWLER, J., delivered the opinion of the Court.

The plaintiff who is the appellant in this case was employed by the South Baltimore Steel Car and Foundry Company as assistant brakeman and to couple cars in its yard.

While in the performance of his duty he was injured, as he alleges, through the negligence of his employer, and he brought an action in the Superior Court of Baltimore City to recover damages as a compensation therefor.

At the close of the testimony of the plaintiff, he being the only witness produced to sustain the allegations of his *narr.* the learned Judge below, at the request of the defendant, withdrew the case from the jury.  Judgment having been entered in favor of the defendant the plaintiff has appealed.  The only question, therefore, presented is whether the plaintiff offered any testimony legally sufficient to entitle him to recover.  In order to determine this question it will be necessary, of course, to make a careful examination of the testimony, which, however, is embraced in very narrow limits, only one witness, the plaintiff himself, having been examined, as we have seen.

It appears that the defendant company is engaged in Balti-

more in the manufacture of steel cars and for that purpose
has a factory and a yard attached thereto in which cars con-
taining castings are moved from place to place. The plaintiff
testifies that his duty as assistant brakeman was to couple cars
and that before he was employed by the defendant he had
been for eight months with the Baltimore and Ohio Railroad
acting as brakeman and engaged in coupling cars but that the
couplings used by the railroad were automatic; that on the
23rd day of September, 1903, while trying to make a coup-
ling he was caught between two cars; that one of the draw-
heads (sometimes called bumpers) project out about six or
eight inches; that two of them coming together, through de-
fective construction, drew the draw-head back through the sill
which caught him in a position where there was only a space
of two and a-half to three inches; that he became unconscious
and dropped out towards the side when the cars were sepa-
rated; that he was up in the office of the defendant when he
recovered consciousness; that the distance between the sills
when in a proper position and the cars are coupled would be
from 18 to 20 inches. The witness continued in answer to
various questions asked him by his counsel to testify as fol-
lows: that the wood of the sill was rotten and the bumper or
draw-head "went right through that and it caused" him to be
caught between the sills of the cars; that he could not see any
defect in the draw-head; that "it was a defect in construc-
tion;" that he had never been warned about the old casting
cars the defendant used in its yard.

In regard to the nature of his injuries the plaintiff testified
that he was in bed the evening of the day of the accident and
the next day; he returned to his work with the defendant on
the third day after he was injured and remained there for two
weeks when he was discharged because he could not perform
the duties as he had done before he was injured, and that he
was still suffering from the effects of the accident.

Now if this were the only testimony in the case, perhaps, the
plaintiff would have had good grounds to complain of the ac-
tion of the Court below in withdrawing the case from the jury.

But the cross-examination of the plaintiff shows clearly that almost all he knows is that he was injured between the two cars and rendered unconscious, and that when he regained consciousness he found himself some distance from the scene of the accident in the office of the defendant.

The theory which it was sought to establish by the plaintiff's testimony appears to be that the cause of the accident was "defective construction" as the witness several times thus described the alleged defect in the coupling, draw-heads or bumpers, and said that on the occasion of the accident both of these draw-heads were pushed back through the rotten wood of the sill and under the car, so that the space where he was standing was reduced from 18 to 20 inches to a space of 2 or 3 inches. But on his cross-examination it was discovered for the first time that on the occasion of the accident he had noticed nothing about the condition of the draw-heads on the particular cars he was coupling. It was some days after the accident that two of his co-employees pointed out to him two cars which were coupled so as to leave only a few inches between them. He was informed these were the cars which injured him. It further appears that all the plaintiff's testimony relative to the condition of the draw-heads was based upon his examination of these two cars. He assumed they were the cars which caused the injury because he was so informed. A motion was made to exclude this character of evidence on the ground that the identity of the cars could not be legally shown in that way, but it was admitted subject to exception. At the close of the plaintiff's testimony the defendant filed a motion to strike out all the evidence of the plaintiff as to the alleged defective condition of the coupling appliances mentioned in the evidence, because it clearly appears that the plaintiff's evidence on this point is based solely on an examination of certain cars some days subsequent to the accident and because there is no legally sufficient evidence as to the identity of the cars so examined with the cars causing the accident. This motion was refused. Without regard, however, to this supposed failure of proof as to the identity of

the cars, we are of opinion that the plaintiff has failed to make out a case, assuming *all* the evidence to be in.   And we say this because it appears to be clear there is an utter absence of proof to show what caused the bumpers to give way—or if there was a defect to show the nature of it and that it was one which should have been discovered by a proper inspection.

The general principles applicable to this case have been settled in this State and many others.   While the facts are somewhat different here the legal principles involved are the same which were applied in the case of the *South Baltimore Car Works* v. *Schaeffer*, 96 Md. 88.   It was there held as there was no evidence that the alleged defect could have been discovered by a proper inspection, nor any satisfactory proof as to what caused certain bolts to break there could be no recovery.   And it was expressly held in that case that the sudden and unexplained breaking of an appliance affords no presumption of negligence on the part of the employer.   These general principles, as we have said are well settled.   In 7 *Am. & Eng. Ency. of Law*, 1056, will be found an article on *Injuries resulting from Coupling Cars*.   The author has treated the subject in a complete and at the same time in a concise manner, and he cites in the notes many interesting and instructive cases to sustain the propositions contained in his text.

It is, of course, the duty of the employer to furnish suitable and safe appliances.   If this duty be violated the plaintiff must prove it.   But this is not all, for "the plaintiff is met by a further presumption that the employer had no notice of the defect and was not negligently ignorant of it.   It is not sufficient to show that the plaintiff was injured and that the injury resulted from a defect in the machinery, but he must go further and establish the fact that the injury happened because the employer did not exercise proper care in the premises." 1 *Bailey's Per. Injuries* (Master and Servant).   In the case before us, however, the plaintiff's own testimony shows that the defect was not visible—it was deceiving—and there is not only no evidence that the defendant had notice of the alleged defect, but there is also a total absence of proof to show that

the defect, if any, was such as could have been discovered by the employer by the exercise of proper care and caution.

Much reliance was placed by the appellant upon his testimony in reference to the *rottenness of the sills through which* the couplings ran, and it may be conceded that if we could view that testimony in the same light in which it was presented to us by the able counsel for the plaintiff, to say the least, we might have some doubt, as to the ruling of the Court below. But it is apparent from the testimony relied on, that the drawheads or bumpers were not held in position by the sills, that the sills were for the brakeman to stand on in climbing; that the drawheads go right through the sill and are fastened to the car underneath. It does not appear, therefore, that the rottenness of the sills had anything to do with the injury to the plaintiff. In a case like this the plaintiff must prove either that the defendant did not exercise due care in procuring sound machinery, *Hanrathy* v. *N. C. Ry. Co.*, 46 Md. 280, or that there was some defect in it which could have been discovered by the employer by a proper inspection. There is no such proof in this case. It is true the cars are spoken of as "old casting cars." But while the employer is bound to use due care and diligence in providing safe and sound machinery, he is not bound to provide every new appliance or supposed improvement. *Wonder* v. *B. & O. R. Rd.*, 32 Md. 411.

*Judgment affirmed with costs.*