JENNIE E. GLEASON, *vs.* LOUIS B. SUSKIN ET AL.

*Dress of Operator Caught in Revolving Shaft—Contributory Negligence—Instruction.*

Plaintiff, a woman thirty-five years old, who had been employed for fifteen years in factories where shafting and other machinery were used, was the superintendent of the work on sewing machines in defendant's factory. The machines were operated by steam, and the shafting, which ran under the tables, was boxed in order to prevent the clothing of the employees from being caught in it. Plaintiff was aware of the purpose of this boxing, but she had not been expressly warned of danger from an exposed shaft. On the day of the accident in question, plaintiff observed that the end of a certain shaft, projecting beyond a table, had been uncovered for the purpose of making an extension, and this extension was fastened with a set screw. Later on in the day, for the purpose of instructing an employee, plaintiff stood near this exposed, rapidly revolving shaft, with her back turned towards it, and shortly afterwards her skirt was caught by the shafting and the injury was inflicted upon her, to recover damages for which this action was brought. The evidence showed that a shaft like this had a power of suction that would draw around it a light fabric within half of an inch, and if the fabric were frayed the suction would operate at a greater distance. It was not necessary or specially convenient for the plaintiff to take the position she did when injured. *Held,* that the plaintiff's injury was caused by her contributory negligence and she is not entitled to recover damages therefor.

A prayer was offered at the close of the evidence on both sides instructing the jury that upon plaintiff's own evidence, her own want of ordinary care directly contributed to the injury which she received, and therefore the verdict should be for the defendant, is not open to the objection that it segregates the testimony of the plaintiff herself and ignores that of other

witnesses. The prayer is to be construed as embracing all of the evidence offered by the plaintiff. It is not necessary that plaintiff's contributory negligence should be proved by the defendant. That negligence may be disclosed by plaintiff's evidence.

*Decided February 17th, 1909.*

Appeal from the Superior Court of Baltimore City (HAR-LAN, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and HENRY, JJ.

*Thomas G. Hayes* and *John C. Kumpf,* for the appellant.

*S. S. Field,* for the appellees.

HENRY, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City, rendered in favor of the defendants, the appellees here, in a suit instituted against them by the appellant for the recovery of damages for personal injuries sustained by her on account of the alleged negligence of the defendant.

In the view which we take of this case, it will only be necessary for us to consider the action of the Court in granting the fifth prayer of the defendant, inasmuch as, in our opinion, such action was proper and is decisive of the case. The said prayer reads as follows:

"The Court instructs the jury that upon the plaintiff's own evidence, her own want of ordinary care and caution directly contributing to the injuries which she received, and, therefore, the verdict of the jury must be for the defendant."

The testimony of the appellant herself showed that she was 35 years old and that she held the position of forelady in the overall factory of the defendants in the City of Baltimore,

having been so employed for about six months prior to the date of the accident, but having had an experience of fifteen years in other factories in which shafting and other machinery was used. In this factory were about thirty other female employees, it being the duty of the appellant to instruct them and to superintend their work. The sewing machines were arranged in two parallel rows on the floor of the factory, with an aisle between them, and were operated by steam power transmitted by shafting which ran under the centre of the tables at a height of eight inches from the floor. This shafting was boxed for the safety of the employees, in order to prevent their skirts and clothing from catching in it. On Monday, December 2nd, 1907, when the appellant came as usual to her work, she observed that one end of the shaft, which projected beyond the table and which was properly covered on the Friday previous when the employees quit work, had been uncovered for the purpose of making an extension to connect with a button machine, about thirty-five inches distant from the end of the table. This extension of the shaft was made by an iron coupling, fastened with a set screw, that projected about one-half inch beyond the surface. She was aware that the object of boxing the shaft was to prevent catching the clothing of the employees, though she had no knowledge of machinery. On the day in question, in the afternoon, she left her desk, about twenty-two feet away, and went down the aisle for the purpose of giving instructions to the young woman who operated the machine at the end of the table next to the uncovered shafting. In doing this, without thinking about the danger, she took a position in the narrow space about thirty-five by sixteen and a half inches, between the new button machine, the end of the table, and the shafting, facing the employee, and with her back turned towards the shafting. She stated on cross-examination, in reply to a question as to how near her clothing was to the shafting, that "it wasn't near it, it was a good distance from it; I don't know exactly how far it was." Shortly after putting herself in this position, her skirts were caught by the shafting, pull-

ing her under it, with the result that her leg was broken and her body otherwise mangled.

Two expert witnesses, produced by the plaintiff, testified that shafting made as that above described had a power of suction that would draw around it a light fabric that came as close as one-half inch to it, and, if such fabric were frayed, this latent power might operate at a greater distance than one-half inch. No notice was given to the appellant by her employers of any danger from this uncovered shafting. While we do not mean to reflect in the slightest degree upon her veracity, yet the statement of the plaintiff as to her proximity to the shafting must necessarily be taken in connection with the physical facts of the case. It must be remembered, in the first place, that her back was turned to the danger, and, therefore, she was unable to speak with accuracy, and as the space in which she stood, as above stated, was only about thirty-five by sixteen and one-half inches, the latter being the distance from the edge of the table to the shaft, it will be irresistibly forced upon the mind that the "good distance" spoken of by plaintiff must necessarily have been a very small space. Furthermore, if we are to believe the testimony of the expert witnesses, her dress must have been as near as one-half inch to the shaft, otherwise the accident could not have occurred, for it is only over such space that the latent power of suction can operate, unless the fabric attracted be frayed, in which event it might attract for a greater distance; but there is no evidence whatever in the case that her dress was frayed.

We can avoid, and properly so, in our opinion, some of the difficulties presented in the argument by not attempting to separate the shaft, as a physical object, from the invisible force which it exerted a slight distance away, and to draw the distinction in the law of master and servant between these risks which, being obvious, are assumed, and those which, being latent, are not assumed. In other words, not to consider the existence of two dangers—one caused by the shaft itself, and another by the latent power which it gen-

erated when in revolution, the plaintiff being familiar with the one and ignorant of the other. The circumstances of this case do not require us to do this.

The testimony in this case shows that the plaintiff had knowledge that the shafting was boxed for the purpose of preventing it from catching to the clothing of the employees. Possessing this knowledge, it was her duty to avoid and keep at a safe distance from it when uncovered. There was an ample aisle between the two rows of sewing machines from which she could have given instructions to her subordinate, and it does not appear that it was either necessary or more convenient for her to take the dangerous position, as described in the evidence—a position that was dangerous whether the shafting did or did not have the power of suction—or whether there was or was not a set screw extending a half inch beyond the surface.

When an experienced employee and a mature woman, possessing such knowledge of the danger as she admits, either thoughtlessly or deliberately puts herself with turned back in such proximity to a known danger, we think that her conduct mounts up to that marked and decisive character which will warrant a Court in declaring it, as matter of law, contributory negligence whereby her right to recover damages is defeated. Such conduct cannot be reconciled with that ordinary care which the plaintiff was bound to exercise herself before she could be compensated for injury resulting from the negligence of another. The position she took was a dangerous one. She took such position thoughtlessly and unnecessarily and must bear the responsibility of her act. *Shearman & Redfield on Negligence,* sec. 96 ; 20 *Encyc. Law,* 2nd Ed. 120 ; *Booth* v. *McLean Contracting Co.,* 108 Md. 456.

The case is different in its facts from the case of the *American Tobacco Company* v. *Strickling,* 88 Md. 500, which was relied on by the appellant. In that case the employee was a young girl, aged seventeen, wholly ignorant of and inexperienced in the operation of machinery, whose duty it was to sweep down an aisle in which was placed a vertical smooth

shaft, about three inches in diameter, and making about one hundred and seventy revolutions a minute. She did not know and had not been warned that the shaft was dangerous in that it might catch her clothing, and one morning, when engaged at her work, her apron was caught by this shaft and she was whirled around with violence and seriously injured. In the case before us the employee was a mature and experienced woman, to whom the uncovered shafting was, or ought to have been, a signal of danger to put her on guard against the very accident which happened, though it may be that she did not know the precise manner in which the shaft might exert its force.

An objection made to the fifth prayer is that it segregates the testimony of the appellant herself, ignoring the testimony of the other witnesses. We do not so construe it. Neither the language itself nor the purpose of the prayer, nor the time at which it was offered, justify us in so considering it. It was presented at the close of all the evidence, and we think is sufficiently comprehensive in its terms to embrace all the evidence produced on the part of the plaintiff. The word "own," instead of restricting the evidence to an individual, we assume was used by way of emphasis to show that instead of the fact of contributory negligence being proved, as is customary, by the defendant, in this case the plaintiff's own evidence had developed this matter of defense.

It is further objected that this prayer is defective because it takes from the jury the decision of a fact the onus of proof of which is on the party asking such instruction. However much some of the earlier decisions may give countenance to this objection, it can no longer be maintained since the ruling in the case of *Philadelphia, Baltimore & Washington R. Co.* v. *Hand,* 101 Md. 233. The syllabus of that case says: "In an action to recover damages for an injury caused by defendant's negligence, if it appear from the plaintiff's evidence that his own negligence contributed to the occurrence of the injury, he is not entitled to recover, and the defendant is not obliged to offer proof of such contributory negligence. Con-

sequently a prayer is erroneous which instructs the jury that if the defendant relies upon the defense that the plaintiff was guilty of negligence that fact must ·be proved *by the defendant* by preponderating testimony."

The judgment will be affirmed.

*Judgment affirmed, with costs.*