## GEORGE WILLIAM McGEE *vs.* EDWARD G. CUYLER ET AL.

*Master and Servant—Finger of Operator Cut Off by Machine—Sufficiency of Evidence of Negligence.*

Plaintiff, a boy fourteen years old, was employed in defendant's machine shop to work on a machine called a reamer, which was used to cut small pieces out of pipes by means of blades attached to a revolving shaft. The plaintiff had been instructed in the use of the machine and warned not to put his fingers in the vise holding the pipe while the reamer was in motion. It was not dangerous when properly operated. On the day of the accident, on account of which this action was brought, plaintiff was standing on some boards placed in front of the machine. These gave away and threw his weight on the treadle, and thus brought up the vise in which plaintiff's hand was caught and one of his fingers cut off. The defendant did not furnish the platform for the operation of the machine. It was not necessary for that purpose and the use of boards around the machine had been prohibited. *Held,* that the case was properly withdrawn from the jury, since there was no evidence of any negligence on the part of the defendant either in not furnishing proper appliances or a safe place for the work, or in not instructing the plaintiff as

to the use of the machine and the danger attendant thereon, and also because the act of the plaintiff in standing upon the boards was an assumption of risk on his part.

*Decided January 11th, 1910.*

Appeal from the Court of Common Pleas (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*J. Cookman Boyd* (with whom was *Peter J. Campbell* on the brief), for the appellant.

*William L. Marbury* and *Geo. Weems Williams* (with whom was *Wm. L. Rawls* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a negligence case, and the Court below, upon the conclusion of the whole testimony granted a prayer withdrawing the case from the jury and instructed them, there was no legally sufficient evidence to entitle the plaintiff to recover, and their verdict must be for the defendant. The judgment was against the plaintiff and he has appealed.

The single question presented by the record, is the propriety of the Court's ruling in granting the defendant's prayer, as stated.

This prayer, being in the nature of a demurrer, raised the question of the legal sufficiency of the evidence and of the right of the plaintiff to recover.

The plaintiff was a boy of fourteen years of age, and at the time of the occurrence of the accident was in the employ of the defendants, who are the owners of and operate a plant in the City of Baltimore, for the manufacture of machines, tools, plumbers' supplies, etc. He was injured while so employed by having one finger cut off by a machine, which he was operating.

The declaration avers, that on or about the 19th day of October, 1908, the plaintiff was employed by the defendants to work in their machine shop in the City of Baltimore, that he was put to work on a machine known as a reamer which was operated by belting and which was used for the purpose of cutting the bur out of the edges or ends of small pieces of pipe, the pieces of pipe being placed in an iron vise or grip, which is a part of the reamer, by the forefinger of the right hand and held there until securely fastened, after the machine would be started by treading on a wooden handle or pedal, the end of which was about two feet from the floor. causing the front part of the reamer to which was attached a round shaft, on the front end of which shaft there is a projecting blade or blades, to move with great rapidity towards the piece of pipe held in the vise or grip and enter into and revolve around the pipe. That although unknown to this plaintiff at or before the time of the accident, but well known to the defendants, the machine was exceedingly dangerous and should be operated only by a skillful and experienced mechanic; that this plaintiff was a new hand in operating the machine, without any experience, with no knowledge of machinery and with no knowledge of the dangerous character of this particular machine; that while so engaged in operating the machine, and while exercising due care and caution on his part, and because of the negligence and want of care of the defendants and their agents in not furnishing him reasonably safe and proper appliances with which to work, and in not furnishing him a reasonably safe and proper place in which to work, and in not properly instructing the plaintiff in the use and manner of operating said machine, and the dangers attendant thereon, his right forefinger was caught by the blade or blades on the shaft and the same was completely cut off, thereby seriously injuring him.

The machine and the manner of its operation, is described by the witness Lindsay, an expert engineer as follows: "The nipples or piece of pipe that is to be reamed, is grasped in the jaws of the vise or chuck by the turning of the hand-

wheel. The vise is made to move by guides of some kind in the bed, in a line parallel with the shaft on which the reamer revolves, that motion is imparted to the vise by means of a chain attached to the vise, one end of which is attached to the treadle. The motion of the vise toward the reaming tool is obtained by pressing down upon the treadle. There appears to be attached to the opposite side of the vise a rope or cable to which is hung a number of weights. The object of those weights is evidently to return the vise to its initial position after the work is performed, after the foot is removed from the treadle. Now, describing the operation, I would say the nipple is first inserted in the vise, the head revolving by a bolt, then the foot is placed upon the treadle, which starts through the medium of this chain, the vise carrying with it the nipple against the reaming tool which performs the work. The foot is removed from the treadle, and the action of the counterweight returns it to its initial position, when the work is removed from the vise and another piece is inserted."

The primary and controlling cause of the accident, is stated by the plaintiff in his testimony to be as follows: "Then, as I was standing on the platform down here, the piece under this side slid from under me, and I had my foot on the treadle and the finger in here (indicating), the finger here, and as I stepped on the platform here the board on this side gave way and that threw my weight on full on the side, right on the treadle; threw my weight on this treadle (indicating), and brought this vise up and cut my finger from the knuckle, right back of the knuckle, off," and that he did not know what made the platform give way. It appears from the evidence, it was, the giving away of the platform near the machine which caused him to slip and press the treadle. and this caused the injury.

The specific negligence charged, in the declaration against the defendant, consists, first, in the failure of the defendants to furnish the plaintiff safe and proper appliances, with which to work; secondly, the failure to furnish him a rea-

sonably safe and proper place in which to work; and thirdly, in not properly instructing him, in the use and manner of operating the machine and the dangers attendant thereon.

We have examined the evidence presented on this record with great care, and we are unable to find any proof whatever of any negligence on the part of the defendant, which according to the well settled rules of law applicable to this class of case that would justify a Court, in holding the defendants liable in this action.

The injury of which, the plaintiff complains, was not due to any neglect of duty, the defendants owed the plaintiff but it was caused by the slipping of certain boards, which the plaintiff called a platform near the machine, on which the plaintiff stood, at the time of the accident. This platform, was described by the plaintiff as consisting of "two or three pieces of board laying on top of each other at each end, and a piece of board laying across of them" and these boards were not fastened together. It was not a fixture and was not secured to the floor. He also testified, "and this end here gave way under me and my weight fell on the treadle when the vise came together and I had my finger in the nipple and was caught in the revolving knife," and that he did not know what made the platform give way. There is some conflict in the evidence as to whether or not the platform or boards were there at all, as testified by the plaintiff. But the testimony of two of the defendants' witnesses, that the defendants did not furnish the platform, for the operation of the machine and did not permit such boards around the machine, is absolutely uncontradicted and not denied.

The witness Foster the foreman testified, "to the best of my knowledge and belief there was no such thing (meaning a platform), because it is something I don't permit around a machine in that place there, to allow anything that would be a t: ap here that an employee is liable to fall over or against the mechanism," and the defendants do not furnish platforms for the operation of the machines. And in answer to the question if the treadle is at its highest point eighteen inches

above the floor, is it necessary in order to operate that treadle, for the operator to stand on a platform, he replied, it was not.

The witness Dockson testified, there was no platform at the machine when he taught the boy how to work, or after he was injured, and the only boards he saw, were in the galvanizing room, and not near the machine, that it would be just as easy to run the machine standing on the floor, with the foot on the treadle, as standing on a box, that the foreman did not allow the employees to have boards around the machines.

But assuming, the platform or boards were there, as testified to by the plaintiff, it is quite certain, there can be no recovery in this case, because the uncontroverted evidence shows that the defendants did not furnish it, but prohibited the use of boards around the machine. The evidence also shows that there was no necessity for the use of these boards to operate the machine, and there was no platform or boards around the machine, when the plaintiff was first instructed in the work, he was employed to do. If there was a platform there at all, it was put there without the knowledge of the defendants and against the express directions of their foreman, by someone acting without authority.

The established doctrine and rule of law, in such cases, is correctly stated in 12 *A. & E. of Law,* 2nd Ed., 952-3, and supported by the American cases. It is this: "A master should not be charged with liability for the negligence of a workman who furnishes an appliance without having been authorized by the master to discharge that duty, and if the defective appliance which caused the injury was constructed by a servant, no part of whose employment it was to construct such appliances for anybody but himself, there can be no recovery."

In *Callaway* v. *Allen,* Circuit Court of Appeals, Seventh Circuit, 64 Fed. Rep. 297, it was held, where a servant is injured by the careless use by his fellow servants of a machine which is not necessarily dangerous, if properly used and which is not furnished by the master, but by the fellow

servant against the master's orders, the master is not liable therefor.

In *Maxfield* v. *Graveson,* 131 Fed. Rep. 841, it is said, the fact that an employee was not present at the time a change was made in appliance by his fellow servants without the master's knowledge by reason of which he was subsequently injured, does not render the master liable for the injury.

In *Guggenheim Smelting Co.* v. *Flanigan,* 62 N. J. L. 354, it is said, if the master supplies proper tools and appliances for the work in which his employees are engaged, he is not liable for an injury which one of his servants receives by reason of the servants selecting from such tools and appliances one not adapted safely to his work. If the master furnishes safe ladders and a servant uses a ladder not provided by the master, but made by a fellow workman as a temporary make-shift by reason whereof the servant is injured, the master is not liable for the injury, although the servant may have reason to believe the ladder he uses is one of those provided by the master. And to the same effect, are the cases of *Maher* v. *Thropp,* 59 N. J. L. 186; *Felch* v. *Allen,* 98 Mass. 572; *McKean* v. *Colorado Fuel and Iron Co.,* 18 Colo. App. 285; *Mercer* v. *Jackson,* 54 Ill. 397; *Wilson* v. *Quarry Co.,* 77 Iowa, 429.

There is not a particle of evidence to show that the defendants did not use proper care and diligence in furnishing the reamer, the machine upon which the plaintiff was employed to work. It was not necessarily dangerous, if carefully handled and properly worked.

Nor does the evidence show, that the appellees failed to provide and maintain a reasonably safe place for the plaintiff to operate the machine. There is no contention that the reamer was not properly constructed or defective in any respect whatever, but the evidence shows that it was one that is ordinarily used for the purpose of the work the plaintiff was employed to do. But if the place was rendered unsafe and dangerous by the presence of the platform or boards, near the machine, it was a condition and danger, not created

or caused by the appellees, and for which they can in no way be held liable. They neither furnished nor authorized the use of the boards or platform, and prohibited its use. If such a responsibility, said the Supreme Court of New Jersey, in the *Smelting Co. Case, supra,* is cast upon the master, it would be necessary in his protection to have an *alter ego* to attend constantly upon every workman in his service, to see that he did not use an implement unfitted for his work. The imposition of such a duty upon the master is without reason, justice or authority to uphold it.

But apart from this, we are of the opinion, that the danger, under the facts of this case, of going upon the boards, and putting his finger inside the nipple when placing it in the vise, was open, obvious and apparent to him, and a plain assumption of risk on his part.

There can be no difficulty in this State as to the rule of law applicable to a case like this. It has been considered and determined by recent decisions of this Court. *Linton* v. *Balto Mfg. Co.,* 109 Md. 404; *Gans Salvage Co.* v. *Byrnes,* 102 Md. 247; *Tkac* v. *Md. Steel Co.,* 101 Md. 179. Mr. Bailey in his work on Masters' Liability for Injuries to Servants thus states the general rule, which has been approved by the Courts of the States: "It is the duty of the servant, on entering upon his service, to ascertain what he is expected to do, and the dangers directly connected therewith.

"As stated by a learned Court: 'It is the duty of the servant to exercise care to avoid injuries to himself. He is under as great obligation to provide for his own safety from such dangers as are known to him, or are discernible by ordinary care on his part, as the master is to provide for him. He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly to his work where there is danger. He must inform himself. This is the law everywhere.'

"When he is a learner, and engages to work in a hazardous branch of the service, he must improve every opportunity

furnished by the master to learn of his duties and their accompanying danger. If he fails, he is guilty of neglect. He must use reasonable care in examining his surroundings, to observe and take such knowledge of dangers as can be attained by observation. In performing the duties of his place, he is bound to take notice of the ordinary operation of familiar natural laws, and to govern himself accordingly. If he fails to do so, the risk is his own. He is bound to use his eyes to see that which is open and apparent to any person using his eyes; and if the defect is obvious, and suggestive of danger, knowledge on the part of the servant will be presumed, as well as when the dangers are the subject of common knowledge.

"The duty of the master, in such case, is not to see that the servant actually knows. He has a right to rest upon the probability that anybody would know what was generally to be seen by his own observation. So that in building his structures or conducting his business the master has the right to assume that the servant will exercise, in their use, ordinary care, and not unnecessarily expose himself to hazards not necessary or usual in his employment. The master's duty is met when he constructs and maintains his appliances in such manner that they are reasonably safe when prudently used. The degree of care on the part of the servant required to be exercised is such care, prudence and caution as prudent men under similar circumstances would ordinarily exercise. Negligence in a servant may, and often does, consist in failing to know, as well as failing to do; and such is always the case when it is his duty to inform himself and know."

And this rule is supported by the following cases: *Linton Coal and Mining Co.* v. *Persons,* 43 N. E. Rep. 651; *Feely* v. *Pearson Cordage Co.,* 37 N. E. Rep. 368; 26 *Cyc.* 1213, sec. 6; *Linton* v. *Balto. Mfg. Co.,* 109 Md. 404; *Gans Sal vage Co.* v. *Byrnes,* 102 Md. 247; *Eckhart* v. *Lazaretto Guano Co.,* 90 Md. 189.

The risk of placing his finger inside the nipple, in contact with the revolving knife, was obvious, plain and open, and

was an assumed risk on his part. The master is clearly not bound to instruct or to warn his servants against risks and dangers which that servant can appreciate. *Hettchen* v. *Chipman,* 87 Md. 729; *Michael* v. *Stanley,* 75 Md. 464.

In the case at bar, the plaintiff was instructed how to operate the machine and was told the machine was dangerous. He was warned at times in its use, and was told not to put his finger inside the nipple because there would be danger, if the nipple came in contact with the revolving knife.

It is contended upon the part of the appellant there was conflict in the testimony, as to whether the boy was instructed to place his finger in the nipple when operating the machine to constitute such negligence, as to have taken the case to the jury. Mr. Lindsey, the plaintiff's expert, testified, putting the finger inside the nipple when placing it in the vise was the right way to handle the nipple and to operate the machine.

We are of the opinion, upon a review of the whole case, that the record does not furnish any legally sufficient evidence of negligence on the part of the defendants, and there was no question for the jury to determine. The defendants' prayer withdrawing the case from the jury was properly granted and the judgment will be affirmed.

*Judgment affirmed, with costs.*